**Joseph R. MATCZAK, Plaintiff,**

v.

**FRANKFORD CANDY AND CHOCOLATE COMPANY, Defendant.**

No. 96–CV–3083.

United States District Court, E.D. Pennsylvania.

Jan. 14, 1997.

Edward J. Daly, Law Offices of Edward J. Daly, Philadelphia, PA, for Plaintiff.

Marvin L. Weinberg, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Defendant.

## *MEMORANDUM AND ORDER*

. JOYNER, District Judge.

### INTRODUCTION

In this federal question action, plaintiff Joseph R. Matczak has brought a discrimination claim against his former employer Frankford Candy and Chocolate Company ("Frankford Candy") for alleged violations of the Americans with Disabilities Act ("ADA"), as codified at 42 U.S.C. § 12101 *et seq,* and the Pennsylvania Human Relations Act ("PHRA"), as codified at 43 Pa. Stat. Ann. § 951 *et seq.* Defendant has filed this motion for summary judgment pursuant to Fed. R.Civ.P. 56(c) and we have granted this motion.

### BACKGROUND

On or about April 19, 1993, plaintiff began working for defendant as a maintenance supervisor and as such, plaintiff was responsible for becoming familiar with the different types of machinery and supervising twelve to sixteen mechanics working on that machinery. After about ninety days, plaintiff was reassigned to the position of Building Maintenance Supervisor. In this position, plaintiff was responsible for maintaining Frank-

ford Candy's facilities and supervising two mechanics.

On or about November 19, 1993, plaintiff suffered an epileptic seizure while at work. Plaintiff was then taken to the hospital and put under the care of Dr. Robert Knobler. Approximately seventeen days later, Dr. Knobler released plaintiff but imposed certain restrictions on his activities. Specifically, plaintiff was instructed to refrain from driving or climbing heights, and to take certain medication for approximately six months. Dr. Knobler wrote a note to this effect and plaintiff gave it to Edward Barth and Nathan Hoffman, his managers at Frankford Candy.

Nevertheless, Frankford Candy refused to allow plaintiff to return to work. Instead, Frankford Candy asked plaintiff to sign a release, and on or about December 21, 1993, plaintiff complied with this request. The release provided, inter alia, that plaintiff would submit to a medical examination at the request of Frankford Candy or else lose compensation for the period of his refusal, and that plaintiff would be accommodated by receiving a part-time, at-will job from Frankford Candy which could be terminated with or without notice.

The next day, plaintiff was allowed to return to work at Frankford Candy and was placed on restricted duty. On April 22, 1994, Frankford Candy terminated plaintiff's employment and allegedly told him that business was slow and therefore his job was being eliminated.

Defendant claims that plaintiff was fired because he did not adequately perform the tasks he was given after he returned to work. Defendant also claims that they accommodated the restrictions that plaintiff's doctor placed on his activities and gave plaintiff alternative tasks that were not prohibited by his doctor, and yet plaintiff failed to complete them. Specifically, plaintiff was required to create an inventory of all machinery and shop parts and enter it into a computer, create an asset list of all equipment, create data sheets, and work on maintenance programs. In addition, defendant points out

that plaintiff's hours or job title did not change and therefore that they did not discriminate against plaintiff.

Defendant also makes several legal arguments in support of its motion. First, defendant argues that plaintiff's epilepsy is not a disability within the meaning of the ADA and that in any event, defendant's actions do not constitute discrimination within the meaning of the ADA. Second, defendant argues that plaintiff does not have a cause of action under the PHRA since the PHRA employs the same definitions as the ADA. Finally, defendant argues that plaintiff does not have a claim for negligent infliction of emotional distress because he has not suffered any physical harm, nor does he have a claim for intentional infliction of emotional distress, because defendant's conduct cannot be said to be so outrageous as to support such a claim.

## DISCUSSION

### I. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) authorizes the court to grant summary judgment if there is no genuine material issue of fact. In deciding the motion, the court is constrained to draw all reasonable inferences in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 340 (3d. Cir. 1985). If a reasonable jury could find in favor of the non-moving party, summary judgment will not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Rather, the summary judgment standard requires the moving party to show that the case is so one-sided that it should prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512. Nevertheless, the non-moving party must raise more than a scintilla of evidence in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Further, the non-moving party cannot survive a summary judgment motion by relying on unsupported assertions. *Id.*

### II. *ADA Claim* [1]

The ADA prohibits discrimination against individuals with disabilities in connection

---

**1.** The PHRA has definitions that are exactly the same as the ADA. Therefore, we will not discuss

with their employment and provides, in pertinent part,

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (West 1995).

A covered entity is any "employer, employment agency, labor organization, or joint-labor management committee." 42 U.S.C. § 12111(2). The term disability refers to a "physical or mental impairment that substantially limits one or more of the major life activities of [an] individual, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "reasonable accommodation" may involve "job restructuring, part-time or modified work schedules." 42 U.S.C. § 12111(9)(B).

In addition to the definitions provided in the text of the statute, there are several regulations which aid in the interpretation of the provisions of the ADA. Under these regulations, physical impairment has been defined to include epilepsy, see 29 C.F.R. app. § 1630.2(h), and major life activities have been defined to refer to functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(h)(2)(i).

■ Applying the above principles to the instant case, we note that plaintiff's epilepsy would constitute a physical impairment within the meaning of the ADA. Nevertheless, we must next determine if plaintiff's epilepsy

can be said to substantially limit his ability to perform life's activities such that it can be considered a disability. Plaintiff has indicated that his epilepsy prohibits him from performing some manual tasks, such as climbing heights or working around machinery, but none of these tasks seems to cause plaintiff's impairment to rise to the level that it can be said that they substantially limit his ability to perform life's functions. *See e.g. Kelly v. Drexel*, 907 F.Supp. 864, 874 (E.D.Pa.1995) *aff'd* 94 F.3d 102 (3d. Cir. 1996) (plaintiff's inability to walk more than a mile or climb stairs even though most people could probably do so does not constitute disability within meaning of ADA). The inability to climb heights or work around machinery, even though most people may be able to do so, cannot be said to be a substantial limitation. Indeed, the inability to perform the tasks required of a single job is not a substantial impairment; the impairment would have to restrict the person from performing a class of jobs or a broad range of jobs in various classes as compared to the average person with similar skills. *See* 29 C.F.R. § 1630.2(j)(3)(i).

The nature and severity of the impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment are also to be considered when determining whether the plaintiff's abilities have been substantially limited. *See* 29 C.F.R. § 1630.2(j)(2)(i)(iii). Plaintiff's physician judged plaintiff's impairment to last only approximately six months, a period of time which does not suggest a severe or permanent impairment. Therefore, we conclude that plaintiff does not have a physical or mental impairment that substantially limits his life activities.

Having determined that plaintiff does not have a substantial physical or mental impairment, we note that plaintiff can only be adjudged to have a disability within the meaning of the ADA if he were regarded by his employer as having such an impairment.[2] If so, plaintiff could then assert a claim under

---

plaintiff's PHRA claims since our discussion of the ADA claim will dispose of the PHRA Claims as well. *See e.g. Doe v. Kohn Nast & Graf P.C.*, 862 F.Supp. 1310, 1323 (E.D.Pa.1994).

**2.** Since we have decided that plaintiff's epilepsy is not an impairment that substantially limits his life's functions, any record of such an impairment is irrelevant.

the ADA if his employer discriminated against him based on this impression. Since plaintiff's illness was well-known to his employers, it is a factual question reserved for a jury whether his employer regarded him as having such an impairment and then discriminated against him because of it. *Kelly,* 907 F.Supp. at 874.

Since a jury could find that plaintiff was regarded as having a disability, we must next determine whether plaintiff was a "qualified individual with a disability." Plaintiff and defendant have both agreed that plaintiff was capable of performing his job with the accommodations defendant made; indeed defendant has admitted that the essential function of plaintiff's job is that of supervising and that that task could be done without requiring plaintiff to perform any of the activities prohibited by his doctor. Therefore, plaintiff meets the test for a "qualified individual with a disability."

Nevertheless, plaintiff must also present a prima facie case of discrimination, which requires plaintiff to not only show that he has a disability within the meaning of the statute, and that he was terminated, but also that his work performance met the employer's legitimate job expectations, and employees not in the protected class were treated more favorably. *Kelly,* 907 F.Supp. at 872. Plaintiff has not refuted defendant's allegations that his work performance was unsatisfactory, neither has plaintiff shown that other employees were treated more favorably. Accordingly, plaintiff has failed to present a prima facie case and his ADA claim is dismissed.

*III. Negligent and Intentional Infliction of Emotional Distress Claims*

We next consider plaintiff's claims of negligent and intentional infliction of emotional distress. Plaintiff has claimed that he experiences emotional distress that is evidenced by crying. Initially, we note that the worker's compensation statute bars an employee from suing an employer for negligent and intentional emotional distress claims. *See Dugan v. Bell Telephone of Pennsylvania,* 876 F.Supp. 713, 723–24 (W.D.Pa.1994). Furthermore, in order to prove the negligent infliction of emotional distress, plaintiff must show that he experienced bodily harm. *See Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236, 1239 (1981). Plaintiff has not done so and indeed, plaintiff seems to have misunderstood the law in this area. In response to defendant's arguments that plaintiff must show he experienced bodily harm, plaintiff has pointed to the physical act of crying and stated that the heaving of the upper torso, difficulty in breathing, and the excretion of tears are physical acts which meet the physical harm requirement. Yet, plaintiff is not required to show a physical act, rather plaintiff must show physical harm. Since he has failed to do so, plaintiff's negligent infliction of emotional distress claims must be dismissed.

In order to show that defendant is guilty of the intentional infliction of emotional harm, plaintiff must show that defendant's acts were so extreme in degree that they could be considered outrageous. *Id.* at 1238. This plaintiff has not done. *See e.g. Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d. Cir. 1988) (firing defendant the first day back at work after triple bypass surgery even though the emotional pain could affect recovery was not intentional infliction of emotional distress). Accordingly, plaintiff's emotional distress claim is dismissed.

**CONCLUSION**

Plaintiff's ADA claim is dismissed because plaintiff has failed to present a prima facie case of discrimination. Furthermore, plaintiff's negligent and intentional infliction of emotional distress claims are also dismissed because plaintiff has failed to prove that he suffered physical harm or that defendant's actions were outrageous. Accordingly, defendant's summary judgment motion is granted. An appropriate Order follows.

**ORDER**

AND NOW, this 14th day of January, 1997, upon consideration of Defendant's Motion for Summary Judgment, said motion is GRANTED.