

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-1997

# Matczak v. Frankford Candy

Precedential or Non-Precedential:

Docket 97-1057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Matczak v. Frankford Candy" (1997). *1997 Decisions.* Paper 262.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/262

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 18, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1057

JOSEPH R. MATCZAK,

v.

FRANKFORD CANDY AND CHOCOLATE COMPANY,

Joseph Matczak,

        Appellant.

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 96-cv-03083)

ARGUED SEPTEMBER 23, 1997

BEFORE: COWEN, ROTH, and LEWIS, Circuit Judges.

(Filed November 18, 1997)

        Edward J. Daly (ARGUED)
        Suite 500
        437 Chestnut Street
        The Lafayette Building
        Philadelphia, PA 19106

         Attorney for Appellant

Marvin L. Weinberg (ARGUED)
Fox, Rothschild, O'Brien & Frankel
2000 Market Street
10th Floor
Philadelphia, PA 19103

 Attorney for Appellee

Jennifer S. Goldstein (ARGUED)
Equal Employment Opportunity
 Commission
1801 L Street, N.W.
Washington, D.C. 20507

 Attorney for Amicus-appellant

OPINION OF THE COURT

LEWIS, Circuit Judge.

In this case, we must determine whether an epileptic, who controls his disability with medication, can maintain an employment discrimination action without showing he satisfied his employer's expectations or showing favorable treatment of non-disabled employees by the employer. We hold that such an individual can present a prima facie case of employment discrimination and therefore should survive a motion for summary judgment.

We will reverse the judgment of the district court as to this claim and remand for further proceedings.

I.

Plaintiff-appellant Joseph Matczak began working for defendant-appellee Frankford Candy and Chocolate Company ("Frankford") in April 1993 as a Maintenance Supervisor. After about ninety days, Matczak was reassigned to the position of Building Maintenance Supervisor. The duties of this position included maintaining Frankford's facilities and supervising two mechanics. In November 1993, Matczak suffered an epileptic seizure at work and was hospitalized for seventeen days. He had been

2

diagnosed with epilepsy almost thirty years earlier but had controlled the condition with medication and had never experienced a seizure prior to this incident.

Matczak's doctor put him on a new medication for about five and a half months and restricted his physical activities for that period of time. The doctor sent a note to Matczak's superiors at Frankford, informing them of the restrictions on Matczak's activities. The note stated: "Mr. Matczak is under my care and cannot at present work around moving machinery, operate a vehicle or work at heights. He can, however, effectively supervise this type of work by others. . . . This applies for the next 5 1/2 month[s.]" Appendix at 51a. Upon his return to work in December, Frankford placed Matczak on restricted duty and assigned various tasks to him which were not prohibited by his doctor (e.g., creating a computer inventory of machinery parts). In April 1994, Frankford fired Matczak. Frankford's reasons for firing Matczak are unclear since it has offered two conflicting explanations: (1) Matczak was fired because "he did not adequately perform the tasks he was given after he returned to work" and (2) Matczak was fired because "business was slow . . . and his job was being eliminated." Matczak v. Frankford Candy and Chocolate Company, 950 F. Supp. 693, 695 (E.D. Pa. 1997). Matczak claims these explanations serve as pretext for the real reason he was fired: because he has epilepsy.

Matczak brought suit against Frankford in district court for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. S 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. ANN. S 951 et seq.1 Matczak also made claims of negligent and intentional infliction of emotional distress. Pursuant to Federal Rule of Civil Procedure 56(c), Frankford moved for summary judgment as to all claims. The district court granted the motion, finding that (1) Matczak was not actually disabled under the ADA; (2) even if a jury considered Matczak "regarded as" disabled by his employer,

_____

1. Although we will only discuss the ADA claim, any analysis applied to the ADA claim applies equally to the PHRA claim. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

3

he had not presented requisite elements of a prima facie case of employment discrimination; and (3) the negligent and intentional infliction of emotional distress claims were without merit.

II.

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. S 12112(a). The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. S 12102(2). A "qualified individual with a disability" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. S 12111(8).

Before the district court, Matczak claimed protection under the ADA because his epilepsy is a physical impairment substantially limiting major life activities. Alternatively, Matczak claimed that, even if his impairment is not substantially limiting, Frankford regarded him as being substantially limited by it. Matczak made no claim that he had satisfied Frankford's expectations with regard to his performance or that Frankford had treated employees outside the ADA's protected class more favorably.

The district court acknowledged that Matczak's epilepsy would constitute a physical impairment under the ADA but found that the impairment did not substantially limit any major life functions other than "some manual tasks, such as climbing heights or working around machinery." Matczak, 950 F. Supp. at 696. The district court also concluded that the impairment could not be "severe or permanent" because the condition was only to last "approximately six months." Id. However, noting that a jury could conclude Matczak was "regarded as" disabled by

4

Frankford, the district court turned to Matczak's prima facie case of discrimination. Id. at 697. The district court determined that a prima facie case required a showing that the employer's legitimate expectations were met and that employees outside the protected class received favorable treatment. Id. Since Matczak did not present evidence of these two elements, the district court ruled that he did not present a prima facie case of employment discrimination. Id. The district court also found no evidence to support Matczak's claims of negligent and intentional infliction of emotional distress. Id. Based on these conclusions, the district court granted Frankford's motion for summary judgment. Id.

III.

We have appellate jurisdiction pursuant to 28 U.S.C. S 1291. We exercise plenary review over a district court's grant of summary judgment. Olson v. General Electric Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). We apply the same test the district court should have applied in the first instance. Lawrence v. National Westminster Bank, New Jersey, 98 F.3d 61, 65 (3d Cir. 1996). We must therefore determine whether the record, when viewed in the light most favorable to Matczak, shows that there is no genuine issue of material fact and that Frankford was entitled to summary judgment as a matter of law. See Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Brewer v. Quaker State Oil Refining Corporation, 72 F.3d 326, 329-30 (3d Cir. 1995).

IV.

We first consider the district court's conclusions with regard to Matczak's ADA claims. As to these claims, the district court concluded that: (1) Matczak could not claim to be actually disabled under the ADA; and (2) Matczak could claim to be "regarded as" disabled but did not present a prima facie case of discrimination. We will address each of these assessments in turn.

5

A.

The district court determined that Matczak's impairment did not substantially limit major life activities because he was only restricted from participating in a small number of activities and would only be restricted to that degree for a few months. This reasoning is flawed; it confuses the disease with its treatment.

Matczak's doctor did not predict that his epilepsy would be cured in five and a half months. He merely prescribed certain medication and prohibited specific activities for that period. Appendix at 51a. The logical inference is that, after that period, the doctor expected Matczak to resume living with epilepsy as he had for most of the past three decades. The record only indicates that the restrictions and course of medication were to last five and a half months. No evidence supports the conclusion that Matczak's epilepsy would have been cured after that period.

Furthermore, although the district court correctly observed that Matczak can engage in most life activities, it neglected to note that he can only do so with the assistance of medication. Matczak has lived a relatively normal life in spite of his epilepsy, but he has done so by taking medication to control the condition. Appendix at 30a.

The ADA itself does not say whether mitigating measures should be considered in determining whether a given impairment substantially limits one or more of the major life activities of an individual. Nonetheless, we do receive guidance from two other sources. First, the Equal Employment Opportunity Commission ("EEOC") has set forth interpretive guidelines for the ADA that state, "The determination of whether an individual is substantially limited in a major life activity must be made . . . without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. pt. 1630 App. S 1630.2(j). Although we are not bound by the EEOC's guidelines, we do afford its interpretation a great deal of deference since Congress charged the EEOC with issuing regulations to implement the ADA. See 42 U.S.C. S 12116; Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984) (stating deference is

6

"accorded to an [agency's] construction of a statutory scheme it is entrusted to administer"). The EEOC's guidelines constitute an appendix to the regulations and therefore do not command the same degree of deference as the regulations themselves. See Appalachian States Low-Level Radioactive Waste Commission v. O'Leary, 93 F.3d 103, 112-13 (3d Cir. 1996) (noting that interpretive rules, which are not subject to public notice and comment procedures, merely clarify regulations but are not meant to alter legal rights). Still, we must give the EEOC's interpretation of its own regulations "controlling weight unless it is plainly erroneous or inconsistent with the regulation[s]." Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994) (quoting Bowles v. Seminole Rock & Sand Company, 325 U.S. 410, 414 (1945)).

Our second source of guidance is the legislative history of the ADA. An examination of that history reveals Congress' intent to exclude mitigating measures from assessments of disability. One congressional committee noted, "[P]ersons with impairments, such as epilepsy or diabetes, which substantially limit a major life activity are covered under the first prong of disability, even if the effects of the impairment are controlled by medication." H.R. R EP. No. 101-485(II), at 52 (1990) (emphasis added), reprinted in 1990 U.S.C.C.A.N. 334; see also S. REP . No. 101-116, at 23 (1989) (committee report stating "whether a person has a disability should be assessed without regard to the availability of mitigating measures . . ."). Thus, the ADA's legislative history bolsters the interpretation offered by the EEOC's guidelines. That is, disabled individuals who control their disability with medication may still invoke the protections of the ADA.

Based on the guidance provided by the EEOC's interpretive guidelines and the ADA's own legislative history, we hold that the district court erred in deciding that Matczak could not be considered "disabled" under the ADA. The district court improperly determined the severity and permanence of Matczak's epilepsy based on the relatively short duration of the restrictions imposed. Also, the district court failed to acknowledge that the normalcy of Matczak's life had been attained through the use of

7

medication. To be clear, we must stress that Matczak cannot be considered disabled merely because he is epileptic. Some individuals suffer from relatively mild forms of epilepsy which cause nothing more than "minor isolated muscle jerks" -- so we cannot and do not conclude that all epileptics are substantially limited by the impairment. Lewis P. Rowland, ed., Merritt's Textbook of Neurology 850 (9th ed. 1995). We simply hold that whether Matczak is disabled or not constitutes a genuine issue of material fact better left for resolution by a jury. Matczak's claim that he suffered discrimination because he is actually disabled should not have been dismissed as a matter of law.

B.

Turning to Matczak's alternative claim that Frankford discriminated against him because it regarded him as disabled, the district court found that this claim could not go to trial because Matczak had not presented a prima facie case of employment discrimination. The district court based this decision on Matczak's failure to show that (1) "his work performance met the employer's legitimate job expectations" and (2) "employees not in the protected class were treated more favorably." Matczak, 950 F. Supp. at 697.

When considering ADA cases in which the employee alleges the reasons for dismissal serve as pretext for the employer's unlawful discrimination, we derive our analytical framework from the Supreme Court's opinion in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See, e.g., Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 n.3 (3d Cir. 1995) (employing McDonnell Douglas framework in review of ADA claim). According to that framework, the employee must first prove "by the preponderance of the evidence a prima facie case of discrimination." Id. Next, if the employee presents a prima facie case, the employer must "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell Douglas, 411 U.S. at 802. Finally, if the employer articulates such a reason, the employee must have an opportunity to prove that the proffered reason for termination "was in fact pretext." Id. at 804.

8

In applying the McDonnell Douglas framework to this case, the dispositive issue becomes whether the two elements the district court found lacking are necessary to present a prima facie case of employment discrimination. Under McDonnell Douglas, a prima facie case has four general elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff was terminated despite those qualifications; and (4) after the termination, the job remained open and the employer sought applicants with the plaintiff's qualifications. 411 U.S. at 802. Yet, the McDonnell Douglas Court cautioned that there is no rigid formulation of a prima facie case and the requirements may vary with "differing factual situations." 411 U.S. at 802 n.13. Accord Waldron v. SL Industries, Inc., 56 F.3d 491, 494 n.3 (3d Cir. 1995). Therefore, we cannot enumerate every possible element of a prima facie case due to the factual vagaries that distinguish all cases. Nonetheless, we can determine whether specific elements are required in every prima facie employment discrimination case. Turning to the two elements mentioned by the district court, an examination of the case law reveals that neither element is required to present a prima facie case.

The first element the district court found lacking was satisfaction of the employer's expectations. Determining whether Matczak satisfied his employer's expectations is, by its very nature, a subjective assessment. Obviously, we cannot evaluate an employer's expectations to see if they have been satisfied as we can objective measures such as, say, educational requirements. In light of this fact, our past rulings prevent satisfaction of an employer's expectations from being a requisite element of a prima facie employment discrimination case. We have held that "while objective job qualifications should be considered in evaluating the plaintiff 's prima facie case, the question of whether an employee possesses a subjective quality . . . is better left to the later stage of the McDonnell Douglas analysis." Weldon v. Kraft, 896 F.2d 793, 798 (3d Cir. 1990). The rationale behind this position is that "subjective evaluations `are more susceptible of abuse and more likely to mask pretext' " and, for that reason, are better examined at the pretext stage than at the prima facie stage. Id. (quoting

9

Fowle v. C & C Cola, 868 F.2d 59, 64–65 (3d Cir. 1989)).
Accord Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d
Cir. 1995).

The district court found Matczak objectively qualified for
his position because Frankford "admitted that the essential
function of [Matczak's] job is that of supervising and that
. . . task could be done without requiring [Matczak] to
perform any of the activities prohibited by his doctor."
Matczak, 950 F. Supp. at 697. At the prima facie stage, the
district court should have made no further inquiry
concerning Matczak's qualifications. Once it concluded that
Matczak was objectively qualified for the job, the district
court should not have required Matczak to demonstrate
that his performance met his employer's subjective
expectations.

The other element of a prima facie case the district court
found lacking was favorable treatment of employees outside
the protected class. Under McDonnell Douglas, evidence of
favorable treatment outside the protected class is not an
element of a prima facie case. 411 U.S. at 802. Yet, as
noted earlier, we have heeded the Court's direction not to
impose the prima facie requirements woodenly. See
Waldron, 56 F.3d at 494 n.3 (citing, among others,
McDonnell Douglas). Unfortunately, a necessary by-product
of this flexible approach is the absence of clear guidance
as to whether favorable treatment outside the protected
class is a necessary element. In several employment
discrimination cases, we have listed such favorable
treatment as an element of a prima facie case.2 See, e.g.,
Sheridan v. E.I. DuPont de Nemours and Company, 100
F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc) (holding
plaintiff must show position was filled by someone outside
protected class), cert. denied, 117 S. Ct. 2532 (1997);
Weldon, 896 F.2d at 797 (holding plaintiff must show
"others not in the protected class were treated more
favorably"); Lawrence, 98 F.3d at 68 (holding plaintiff must

_____

2. Frankford contends that we have already disposed of this issue in
Kelly. However, in Kelly, we affirmed a district court's grant of summary
judgment in an employment discrimination case but did not refer to the
elements of a prima facie case at all.

10

show replacement by "person sufficiently outside protected class to create an inference of discrimination"). However, we have also rendered opinions in employment discrimination cases without ever mentioning this element as part of a prima facie case. See, e.g., Waldron, 56 F.3d at 494 (holding plaintiff need only show she or he was qualified member of protected class who lost position under circumstances giving rise to inference of discrimination); Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997) (listing only McDonnell Douglas elements of prima facie case); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (same).

Fortunately, we have taken a step towards avoiding any potential confusion. In Olson, we held that a prima facie case basically comprised the four elements enunciated in McDonnell Douglas, i.e., (1) the plaintiff belongs to the protected class; (2) the plaintiff was qualified; (3) the plaintiff was rejected or fired; and (4) after the rejection or firing, the employer sought applicants with the plaintiff's qualifications. 101 F.3d at 951. Yet we further held that, as "an alternative to the fourth element of the McDonnell Douglas scenario," the plaintiff could show that the position was filled "with a person not belonging to the protected category." Id. By holding that favorable treatment outside the protected class is an "alternative" element to a prima facie case, we made clear that this element can be present but by no means must be present.

Two points should be noted about Olson. First, the case is particularly illuminating because it is the only one in which we have discussed this issue explicitly. The previously mentioned cases merely list elements of a prima facie case, but none addresses in detail whether favorable treatment outside the protected class is required for every employment discrimination claim. Second, Olson should not be read as overruling or even conflicting with any of our decisions that list this element as part of a prima facie case. Olson simply elucidates the directive of the Supreme Court that one prima facie standard cannot apply "in every respect to differing factual situations." McDonnell Douglas, 411 U.S. at 802 n.13. Olson does not suggest that favorable treatment outside the protected class is an inappropriate

11

element of a prima facie case. Quite the contrary, Olson endorses this element -- but only as an alternative. Thus, Olson stands in complete harmony with the cases listing such favorable treatment as an element of a prima facie case. Accordingly, we hold that the district court erred in requiring Matczak to show that employees beyond the ADA's protection were treated more favorably than he was.

V.

Turning to Matczak's claims of negligent and intentional infliction of emotional distress, we hold that the district court was correct in granting summary judgment in favor of Frankford as to these claims. Both claims are state tort claims governed by the substantive law of Pennsylvania. Cox v. Keystone Carbon Co., 861 F.2d 390, 394 (3d Cir. 1988). Initially, we must note that Pennsylvania's workers' compensation statute provides the sole remedy "for injuries allegedly sustained during the course of employment." Dugan v. Bell Telephone of Pennsylvania, 876 F. Supp. 713, 723 (W.D. Pa. 1994) (citing 77 PA. CONS. STAT. ANN. S 481(a)). The exclusivity provision of that statute bars claims for "intentional and/or negligent infliction of emotional distress [arising] out of [an] employment relationship." Id. at 724.

Even absent the statute, Matczak's claims do not rise to the level required for a finding of either negligent or intentional infliction of emotional distress. A plaintiff must allege some form of bodily harm to maintain a claim of negligent infliction of emotional distress. See Simmons v. Pacor, Inc., 674 A.2d 232, 238 (Pa. 1996). The only harm Matczak claims is that he cries at least once a week since he was fired. Appendix at 102a. Crying may be a manifestation of emotional distress, but it hardly constitutes physical harm. As for the claim of intentional infliction of emotional distress, Matczak must show that his employer's conduct was of an "extreme or outrageous type." Cox, 861 F.2d at 395 (quoting Rinehimer v. Luzerne County Community College, 539 A.2d 1298, 1305 (Pa. Super. 1988)). We have noted that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."

12

Id. (citation omitted). Matczak has alleged conduct which, while possibly discriminatory, could not be considered "extreme or outrageous." The exclusivity provision of Pennsylvania's workers' compensation statute and the fact that Matczak's underlying emotional distress claims seem without merit indicate the district court's grant of summary judgment was proper as to these claims.

VI.

For the foregoing reasons, we will affirm the grant of summary judgment as to Matczak's claims of negligent and intentional infliction of emotional distress. We will reverse the grant of summary judgment as to the ADA claims and remand to the district court for further proceedings.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

13