Sharon WHITFIELD, Plaintiff,

v.

PATHMARK STORES,
INC., Defendant.

No. CIV. A. 96–246 MMS.

United States District Court,
D. Delaware.

March 12, 1999.

Teresa C. Fariss, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for plaintiff.

Susan G. Harron, White and Williams LLP, Wilmington, DE, of counsel, Michael F. Kraemer, White and Williams LLP, Philadelphia, PA, for defendant.

## OPINION

SCHWARTZ, Senior District Judge.

Sharon Whitfield ("Whitfield") filed this complaint against Pathmark Stores, Inc. ("Pathmark") alleging violations of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq. (West 1995 & Supp.1996). She alleges she was a qualified individual with a disability and Pathmark discharged her because of her disability. Docket Item ("D.I.") 43, at 1. She further alleges that Pathmark unlawfully retaliated against her for bringing her claims. D.I. 43, ¶ 30. Pursuant to a motion by Pathmark, the Court granted Pathmark summary judgment on July 24, 1997, holding that, as a matter of law, Whitfield was not "disabled" under any ADA definition.[1] 971 F.Supp. 851 (D.Del.1997).

The Third Circuit Court of Appeals issued an opinion in *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998), reversing this Court's grant of summary judgment on the issue of the meaning of "disability" under the ADA, and raised issues of law potentially pertinent to this matter. Reacting to *Mondzelewski* and other cases decided subsequent to its first summary judgment determination, this Court, by letter dated January 8, 1999, *sua sponte* revived all issues determined in its first summary judgment opinion and asked the parties for briefing.[2] Whitfield moved for relief from the Court's order granting summary judgment pursuant to Federal Rule of Civil Procedure 60(b), D.I. 128, and the parties have fully briefed the issue. After full consideration by this Court, the Court will vacate its previous grant of summary judgment and proceed

to trial on both the discrimination and retaliation claims.

## I. Standard of Review

The standard of review for summary judgment remains unchanged from this Court's first summary judgment opinion:

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). "In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences." *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir.1997).

971 F.Supp. at 855.

## II. Facts

The Court has previously detailed the facts, viewed in the light most favorable to Whitfield[3] and will incorporate, by reference, the statement of facts from the first

1. Because the Court held that Whitfield's retaliation claim could survive summary judgment, 1998 WL 372313 (D.Del. June 22, 1998), the case has proceeded on that claim. Trial is currently scheduled for March 22, 1999.

2. The letter stated, "Reading *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), *Deane v. Pocono Medical Center*, 142 F.3d 138 (3d Cir.1998) (en banc) and *Mondzelewski v. Pathmark Stores, Inc.*, [162 F.3d 778 (3d Cir.1998)], leads me to conclude that the parties should have the opportunity to revisit all aspects of the Court's first summary judgment opinion."

3. As the Court noted in its second summary judgment opinion:

Although the standard of review for a motion for summary judgment clearly indicates that the evidence, when contradicted, should be considered favorable to the nonmoving party, the Court notes that this approach to interpreting the record is particularly significant in this case. In contrast to many cases that come before the Court, the number and degree of inconsistencies in the parties' claims and in the record are significant, although the extent of those discrepancies will not be reflected in the statement of facts.

1998 WL 372313, at *1 n. 2 (D.Del. June 22, 1998).

summary judgment opinion in this case. 971 F.Supp. at 853–55. Where necessary to the discussion of the merits, the Court will reference those facts or supplement them with other facts from the record.

### III. Discussion

As explained in the opinion of July 24, 1997,

> The ADA prohibits discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12112. "Disability" is defined under the ADA in three distinct ways: An individual is disabled if she (1) has "a physical or mental impairment that substantially limits one or more of [her] major life activities"; (2) has "a record of such impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2).

971 F.Supp. at 856. In support of her motion for reargument, Whitfield argues that she is disabled because she has an impairment which "substantially limits one or more of [her] major life activities" or, in the alternative, because she "has a record of such impairment."[4] The Court will consider each assertion in turn.

### A. *Substantially Limited in Life Activities*

Under the ADA definition, Whitfield is disabled if she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2). It is uncontested that her back injury constitutes an impairment under the ADA. The Court thus turns to whether Whitfield's impairment "substantially limits" one or more of Whitfield's major life activities.

Although the ADA does not define "substantially limits," the EEOC Regulations and Interpretive Guidelines provide relevant guidance. The Third Circuit Court of Appeals has, in opinions issued subsequent

to this Court's grant of summary judgment in this case, described the authority of the EEOC Regulations and Interpretive Guidelines. In *Deane v. Pocono Medical Center,* 142 F.3d 138 (3d Cir.1998) (en banc), the Third Circuit Court of Appeals noted, "Because the ADA does not define many of the pertinent terms, we are guided by the Regulations issued by the Equal Opportunity Commission ("EEOC") to implement Title I of the Act. Regulations such as these are entitled to substantial deference." *Id.* at 143 n. 4 (citations omitted); *cf. Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2209, 141 L.Ed.2d 540 (1998) (holding Justice Department regulations promulgated pursuant to Title III of the ADA are "entitled to deference"). The Third Circuit Court of Appeals has also opined on the weight to be accorded the Interpretive Guidelines:

> Although we are not bound by the EEOC's guidelines, we do afford its interpretation a great deal of deference since Congress charged the EEOC with issuing regulations to implement the ADA. The EEOC's guidelines constitute an appendix to the regulations and therefore do not command the same degree of deference as the regulations themselves. *Still we must give the EEOC's interpretation of its own regulations "controlling weight unless it is plainly erroneous or inconsistent with the regulation[s]."*

*Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d 933, 937 (3d Cir.1997) (emphasis added). In reviewing its grant of summary judgment dated July 24, 1997, the Court will therefore follow the standards recently set forth by the Third Circuit Court of Appeals and 1) grant substantial deference to the EEOC regulations; and 2) give the Interpretive Guidelines controlling weight.[5]

---

**4.** Whitfield has not revived her argument that Pathmark regarded her as disabled. Thus, the Court need not revisit this aspect of its first summary judgment opinion.

**5.** In its original opinion, the Court merely treated the Interpretive Guidelines as "a body of experience and informed judgment to which courts and litigants may properly re-

As explained in the Court's first summary judgment opinion, EEOC Regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In addition, the EEOC Interpretive Guidelines elaborate, "[O]ther major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630, App. § 1630.2(i). The Interpretive Guidelines further state: " 'Major life activities' are those basic activities that the average person in the general population can perform with little or no difficulty." *Id.*

Whitfield continues to assert she is substantially limited in the major life activities of standing, lifting, reaching, bending, driving and working.[6] The Court will first revisit her claim that she is substantially limited in the major life activities of standing, lifting, reaching, bending and driving and then consider her claim that she is substantially limited in the major life activity of working.[7]

1. Major Life Activities of Standing, Lifting, Reaching, Bending and Driving

The EEOC Regulations define "substantially limits" as

(i) Unable *to perform a major life activity that the average person in the general population can perform;* or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Whitfield argues she is "significantly restricted" as described in section (ii). More specifically, she has presented evidence about the medical restrictions on major life activities: 1) Whitfield may not stand for a prolonged period of time—no more than one hour in a four-hour period, B26, B1149[8]; 2) she may not lift more than 20 pounds, B26; 3) she may not reach or bend repetitively, B26; and 4) she may not ride in or drive an automobile for extended periods of time, B26. If she exceeds these limitations, she suffers severe pain and muscle spasms that last for several days and risks worsening her back problems. B1149.

▪ The issue is whether Whitfield has shown a material issue of fact as to whether or not these limitations constitute significant restrictions under the EEOC Regulations. The EEOC Regulations indicate certain factors are to be considered in connection with the "substantially limits" analysis:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

---

sort for guidance." 971 F.Supp. at 856 n. 7 (internal quotations and citation omitted).

6. In its first summary judgment opinion, the Court referred only to the major life activities of standing, reaching, lifting and working. Upon review of her original answering brief in opposition to that motion for summary judgment, the Court notes Whitfield asserted the major life activities of "standing, lifting, reaching, bending, driving, reproducing and working." D.I. 68, at 20. Therefore, bending and driving as major life activities in which Whitfield is substantially impaired are not new theories of the case—rather, they were

produced in the initial response to Pathmark's motion for summary judgment.

7. Under the Interpretive Guidelines, "If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." 29 C.F.R. Pt. 1630, App. § 1630.2(j).

8. All references to Whitfield's Appendix to her answering brief to the original motion for summary judgment, D.I. 69, 70, 71 appear as B____.

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

The Interpretive Guidelines provide further instructions for determining whether an individual is "significantly restricted." First, the focus of the inquiry is to be, not on the name or diagnosis of the impairment, but "on the effect of that impairment on the life of the individual." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Secondly, the language "as compared to the average person in the general population's ability to perform that same major life activity .... is not intended to imply a precise mathematical 'average.'" *Id.* Thus, the Interpretive Guidelines indicate, "[F]or example, an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking." *Id.* Finally, the Interpretive Guidelines note, "An individual is not substantially limited in a major life activity if the limitation, when viewed in light of the [three] factors ..., does not amount to a significant restriction when compared with the abilities of the average person."

In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court considered the meaning of "substantial limitation." In that case, the plaintiff brought suit against her dentist for refusing to fill her cavities in his office because of her HIV-positive status under Title III of the ADA.[9] She claimed she was disabled because her HIV-positive status substantially limited the major life activity of reproduction. After first holding HIV-positive status is an impairment, *id.* at 2204, and reproduction is a major life ac-

tivity, *id.* at 2205, the Court went on to consider whether the plaintiff's impairment substantially limited her ability to reproduce. The Court held that whether, as the plaintiff conceded, the risk of transmitting HIV to any children she might bear was 25%, or, as the defendant in the matter contended, that risk was only 8%, the plaintiff could claim it created a substantial limitation on her ability to reproduce.[10] *Id.* at 2206. The Supreme Court interpreted the disability without any reference to the average person. Rather, the Court appeared to acknowledge that to survive the summary judgment stage on the issue of "substantially limits," the burden is relatively low. Because the claim in *Bragdon* was under Title III of the ADA, the Justice Department's regulations were the regulations to which the Court owed deference, not those of the EEOC, 42 U.S.C. § 12186(b); *Bragdon,* 118 S.Ct. at 2209; therefore, the Supreme Court did not have before it the same set of regulations as this Court has before it now. Nevertheless, the Supreme Court's generous interpretation of "substantially limits" under the ADA is enlightening.

In its initial summary judgment opinion, the Court never explicitly considered the three factors cited by the EEOC Regulations; the Court will now do so. As to the second two factors, "duration or expected duration of the impairment" and "permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment," Whitfield has presented evidence, which if believed at trial, could show both that the impairment (her back condition) and its long-term impact (her restrictions and the fear that she might reinjure her back) are permanent. Whitfield's doctor told Path-

---

**9.** More specifically, she brought her claim pursuant to 42 U.S.C. § 12182, which prohibits discrimination against persons with disabilities by operators of public accommodations.

**10.** The Court went on to hold that because plaintiff's testimony that her HIV-positive sta-

tus had been controlling in her decision to have no more children went uncontested, "no triable issue of fact impedes a ruling on the question of statutory coverage. [Plaintiff's] HIV infection is a physical impairment which substantially limits a major life activity, as the ADA defines it." *Id.* at 2207.

mark, and later told attorneys for Whitfield that her injuries were permanent. B26, 57. Furthermore, if Whitfield exceeds her medical restrictions, she risks worsening the problem. B1149. Thus, analyzed in light of these factors, her impairment is permanent. While Whitfield presents no evidence that the average person does not have similarly long-term or permanent impairments, the Court cannot say a jury could not reasonably conclude the average citizen does not have permanent impairments or permanent impact from those impairments. Thus, the second two factors to be taken into account under the EEOC Regulations counsel strongly in favor of a finding of substantial limitation.

The remaining factor, the "nature and severity of the impairment" is clearly the most complicated factor in this case. As already rehearsed, Whitfield is limited in her ability to stand in one place for longer than one hour in each four-hour period, may not lift more than 20 pounds, must not engage in repetitive reaching, bending and stooping, and cannot drive or ride in an automobile for long periods of time. The nature and severity of the impairment as indicated by these restrictions must be evaluated in light of the "condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i). In its first opinion, this Court explained it was "concerned about the dearth of comparative evidence presented by the plaintiff here. Whitfield has failed to meet her burden of raising a material issue of fact that her injuries caused substantial limitations when compared to the average person." 971 F.Supp. at 858. However, reviewing the record and the universe of ADA cases recently decided by the Third Circuit Court of Appeals leads the Court to believe the jury could determine she is "significantly restricted" as compared to other members of the population in her ability to lift and stand as well as her ability to repetitively reach, bend and stoop.

Whitfield points out Maria D'Eletto, a registered nurse who supervises the disability and return-to-work administration at Pathmark, testified when questioned by counsel for Whitfield at her deposition:

Q: In your experience as a nurse, is an unimpaired person limited in their ability to do repetitive reaching?

A: (Pause) I would have to say no.

Q: How about bending.

A: (Pause) Again, I would have to say no, but I would like to qualify it by saying that one may not necessarily be impaired, but they may be limited because of poor muscle tone or, you know, something along those lines. So—

Q: Well, is a normal healthy adult generally able to repetitively bend?

A: I would have to say yes.

Q: Is a normal healthy adult able to lift more than 20 pounds?

A: (Pause) I would have to say yes, depending on the person's stamina.

Q: Are normally healthy adults generally able to stand in one place for longer than half an hour?

A: (Pause) My professional opinion on that one is going to be no, not without requiring a position change just because of circulatory compromises.

Q: Well, are normal healthy adults able to stand in one place in the way that cashiers are required to stand in one place for longer than half an hour?

A: Yes.

D'Eletto Dep., at 184–85, B1118. From this testimony, a jury might reasonably conclude that compared to the "average person in the general population," Whitfield is "significantly restricted" in her ability to lift and stand as well as her ability to repetitively reach, bend and stoop. Moreover, the nature of Whitfield's lifting restriction is evident when one considers that 20 pounds amounts to a large bag of dog food or a small child. Therefore, given the admonition of the Interpretive Guidelines that the Court is not to require a "precise mathematical 'average',"

and the Supreme Court's indication in *Bragdon* that it would be forgiving in its construction of "substantially limited," the Court, upon reconsideration, holds that Whitfield has adduced enough evidence to survive summary judgment on the issue of whether she is substantially limited in the major life activities of lifting, standing, reaching, bending and stooping.[11]

### 2. Major Life Activity of Working

■ Whitfield also maintains, in the alternative, that she is substantially limited in the major life activity of working.[12] As already noted, the Regulations and Interpretive Guidelines provide separate rules for determining if an individual is disabled by virtue of being substantially limited in the major life activity of working.

The Regulations provide:

With respect to the major life activity of working ... [t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3). In addition to the three factors already discussed (nature and severity of the impairment, duration or expected duration of the impairment, and permanent or long term or expected permanent or long term impact), the following factors *may* be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

The EEOC's Interpretive Guidelines provide the Court with further instructions for evaluating whether an individual is substantially limited in the major life activity of working. First, an individual is not substantially limited in her ability to work merely because she cannot perform a particular job for one employer or because she cannot "perform a specialized job or profession requiring extraordinary skill, prowess or talent." 29 C.F.R. Pt. 1630, App. § 1630.2(j). However, an individual need not be completely unable to work to be substantially limited in the major life activity of working. *Id.* Secondly, the Interpretive Guidelines give a specific example relevant to this case:

For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the

11. Whitfield presents no evidence about her ability to drive compared to other persons. Therefore, Whitfield is precluded from arguing she is substantially limited in driving.

12. Although the Interpretive Guidelines note, "If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual

is substantially limited in working," 29 C.F.R. Pt. 1630, App. § 1630.2(j), at this stage in the litigation, where the Court has determined only that Whitfield has demonstrated enough facts to go forward on whether she is substantially limited in a major life activity other than working, the Court will consider her alternative theories of disability as well.

individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, *e.g.*, the class of semi-skilled jobs. *Id.* Finally,

> [t]he terms 'number and types of jobs' and 'number and types of other jobs,' as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (*e.g.*, 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment.

*Id.*

In addition, the teachings of the Third Circuit Court of Appeals in *Mondzelewski* are relevant in two respects. First, the *Mondzelewski* Court held that in determining whether an individual is substantially limited in her ability to perform the major life activity of work, "the court must consider the effect of the impairment on the employment prospects of that individual with all of his or her relevant personal characteristics." 162 F.3d at 784. Or, to put it differently, "the question is whether his ability to work is sufficiently limited in light of the training, skills, and abilities that he does possess." *Id.* at 785. Secondly, the *Mondzelewski* Court provided guidance regarding the nature and type of evidence required to survive summary judgment on the issue of whether a plaintiff is substantially limited in the major life activity of working. This Court, in its grant of summary judgment in *Mondzelewski*, did not find a report by that plaintiff's vocational expert adequate to support summary judgment because the report "fails to relate the effect of Mondzelewski's 'medium duty restriction' on his ability to perform jobs in the economy, nor does it quantify the number or type of jobs he is precluded from performing due to those restrictions." 976 F.Supp. 277, 281 (D.Del.

1997). This Court further noted it would disregard the example in the Interpretive Guidelines instructing that an individual with a back injury prevented from performing any heavy labor job is substantially limited in the major life activity of working because "this Court is not versed in the particularities of 'medium-duty restrictions' and their relationship to 'heavy labor jobs.' " *Id.* The Third Circuit Court of Appeals rejected this approach to the report. The expert opinion compared Mondzelewski's profile to almost 13,000 jobs listed in the Department of Labor's Dictionary of Occupational Titles and found only eight positions suitable for Mondzelewski, all of which had low employment opportunities in his geographic area. 162 F.3d at 785. The Third Circuit Court of Appeals held "this report is sufficient to show for the purpose of surviving summary judgment that Mondzelewski was 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.' " *Id.* The Court noted the admonition of the Interpretive Guidelines that "the terms 'number and types of jobs' are not intended to impose an onerous evidentiary burden but are meant only to require evidence of the approximate number of jobs from which the individual is precluded from working." *Id.*

In its July 1997 opinion, the Court granted Pathmark summary judgment on the issue of whether Whitfield was substantially limited in the major life activity of working because "Whitfield ... has not met her burden of proving she is substantially limited in the major life activity of work." 971 F.Supp. at 859. The Court found the opinion of Whitfield's vocational expert, Thomas Yohe, did not provide adequate evidence for Whitfield to survive summary judgment on the issue because, "[t]he stated object of [the] report is to evaluate Whitfield's earning capacity.... It did not address the number and/or type of jobs Whitfield will be unable to perform due to her back injury." *Id.* Thus the

Court, although referencing the example of the Interpretive Guidelines which directs that "an individual with a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs," 29 C.F.R. Pt. 1630, App. § 1630.2(j), stated, "Despite the broad nature of this example, the Court finds Whitfield also has not met her burden of proving she is substantially limited in the major life activity of work." 971 F.Supp. at 859. Upon review, the Court, following *Mondzelewski* and its directive that the Interpretive Guidelines have a controlling weight, now holds Whitfield has put forth enough evidence to survive summary judgment on the issue of whether she is substantially limited in the major life activity of working.

The Court initially rejected the usefulness of Yohe's report because it was directed primarily at Whitfield's wage-earning capabilities. Having the benefit of being enlightened by the analysis by the appellate court, the Court now concludes its reading of the Yohe report was too restrictive. Yohe's report, after discussing Whitfield's physical limitations and discussing some jobs which might be suitable for Whitfield, states "the concept of fewer vocational choices" would play "a great role" in the determining future wage loss. B103. He thus notes, "[P]rior to her injuries Ms. Whitfield has no particular physical limitations and was able to perform all duties in her jobs. Now in a sedentary type capacity, the number of jobs in the community that would be physically appropriate for her would be greatly diminished." B103. Yohe also notes that several jobs in which Whitfield expressed an interest would not be physically appropriate for Whitfield because "all require that she be able to remain on

her feet for long hours and also assist in activities that would be greater than a light-duty variety." [13] B102. In briefing, Whitfield provides explanations of the terms sedentary and light-duty used by Yohe in his report. "Sedentary work" requires

> lifting 10 lbs. maximum and occasionally lifting and/or carrying such articles as dockets, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met.

W. Hopke, *Dictionary of Personnel and Guidance Terms*, 323. "Light work" involves

> lifting 20 lbs. maximum with frequent lifting and/or carrying of objects weighing up to 10 lbs. Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree, or when it involves sitting most of the time with a degree of pushing or pulling of arm and/or leg controls.

*Id.* at 213.[14] By contrast, "medium work" is defined as "lifting 50 lbs. maximum with frequent lifting or carrying of objects weighing up to 25 lbs.," *id.* at 221, and "heavy work" is defined as "lifting 100 lbs. maximum with frequent lifting and/or carrying of objects weighing up to 50 lbs.," *id.* at 178.

Yohe's report, in combination with these definitions and the directives of the Interpretive Guidelines, presents evidence adequate to survive summary judgment on the issue of whether Whitfield was substantially limited in her ability to work. First, Yohe's report provides adequate evidence to support the inference that Whitfield has "a back condition that prevents [her] from

---

**13.** These positions are Buyer/Merchandiser, Card/Gift Shop Manager, Hotel/Motel Manager and Food Service Manager. B102.

**14.** This definition is consistent with "light work" as used in Yohe's report. *See* B96–97.

performing any heavy labor job" and is therefore, "substantially limited in the major life activity of working because [her] impairment eliminates [her] ability to perform a class of jobs." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Secondly, Yohe notes that due to Whitfield's physical impairment, the number of jobs available to her given her impairment would be "greatly diminished." The Court therefore holds that Whitfield has satisfied the requirements, at the summary judgment stage, to proceed to trial and urge she is substantially limited in the major life activity of working.

Defendant's arguments to the contrary are unpersuasive. Defendant, and the Court in its original summary judgment opinion, relied upon two cases which the Circuit Court in *Mondzelewski* cited as well: *McKay v. Toyota Motor Mfg. U.S.A.,* 110 F.3d 369 (6th Cir.1997), and *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718 (2d Cir.1994). However, the Court, upon reconsideration does not find them persuasive. In *McKay,* the Sixth Circuit Court of Appeals held the plaintiff was not substantially limited in the major life activity of working because she produced no evidence to show she was unable to perform any jobs other than the one she had. *McKay,* 110 F.3d at 373. Here, Whitfield has presented evidence she is unable to perform more than just her current job. Moreover, as the dissent in *McKay* noted, that Court failed to take into consideration the EEOC Regulations and Interpretive Guidelines. *Id.* at 375–76 (6th Cir.1997) (Hillman, J. dissenting). Given the teachings of *Mondzelewski* requiring deference to the EEOC Regulations and Interpretive Guidelines, the Court no longer finds *McKay* persuasive.

Likewise, *Heilweil* is inapposite. That case was decided under the Rehabilitation Act and contemplated different regulations.[15] *Heilweil,* 32 F.3d at 723. In addition, the Second Circuit Court of Appeals had before it no evidence to suggest the plaintiff in that case was unable to work in any place other than one location at her place of employment. *Id.* Thus, the Court in *Heilweil* ruled "a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working." *Id.* While the Court found plaintiff could be reemployed given her educational background and experience, that was not the controlling factor. *Id.*

Defendant argues that because Whitfield has more education, and has been offered a customer service position at a bank, she is sufficiently dissimilar to *Mondzelewski* that that case is not controlling. Pathmark notes, "Indeed, unlike Mr. Mondzelewski, sedentary type jobs would seem to be more appropriate for a woman with plaintiff's educational background and intelligence." Pathmark's Br., D.I. 130, at 12. These arguments are unpersuasive for two reasons. First, it does not pay due attention to the requirements of the EEOC Regulations and Interpretive Guidelines. They provide that significant restriction on an individual's ability to perform a class of jobs is all that is required to show substantial limitation as required by the statute. 29 C.F.R. § 1630.2(j)(3)(i); 29 C.F.R. Pt. 1630, App. § 1630.2(j). Whitfield is unmistakably unable to perform all heavy and medium duty work, and at least some light duty work. Second, while the evidence, viewed in the light most favorable to Whitfield, shows that with training, she could obtain sedentary or light-work jobs, it also indicates that her work experience is limited almost ex-

---

**15.** Indeed, the Second Circuit Court of Appeals referenced only 45 C.F.R. § 84.3(j) and 28 C.F.R. § 41.31(b). Neither regulation was promulgated by the EEOC—45 C.F.R. § 84.3 was written by the Department of Health and Human Services, 28 C.F.R. § 41.31 by the Department of Justice. In keeping with Third Circuit Court of Appeals' teaching, the Court must grant deference to the regulations and guidelines promulgated by the agency given Congressional authority to do so.

clusively to Macy's and Pathmark, and that her Pathmark employment provides almost no transferrable skills because of her medical restrictions. B95–98. Thus, it is not beyond the realm of possibility that a jury could conclude Whitfield is substantially limited in her ability to work. Indeed, "the court must consider the effect of the impairment on the employment prospects of that individual with all of his or her relevant characteristics." *Mondzelewski,* 162 F.3d at 784. Finally, "[w]hen significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable." *Bragdon,* 524 U.S. 624, 118 S.Ct. 2196, 2206, 141 L.Ed.2d 540 (1998); *accord* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (emphasizing a total inability to work is unnecessary to show substantial limitation). It follows, even if Whitfield may obtain employment elsewhere, she is substantially limited in doing so. Given this circumstance, the Court cannot say, as a matter of law, that Whitfield is not substantially limited in the major life activity of working.

## B. *Record of Impairment*

■ As an alternative ground, Whitfield urges the Court to revisit its decision that she is disabled because she has a record of impairment. As already noted, the ADA categorizes an individual as disabled if she "has a record of . . . an impairment" that substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2). In its original summary judgment opinion, the Court held "a fact-finder could at most find Pathmark believed Whitfield has a temporary back injury from which she was recuperating," and as such, Whitfield did not have a record of impairment. Whitfield argues, to the contrary, that Pathmark knew Whitfield's medical restrictions were permanent when it began its allegedly discriminatory treatment toward her

and stresses that Whitfield could not work at all for four months and could not work at Pathmark for approximately eighteen months. Taken in combination, Whitfield urges these factors illustrate that Whitfield is disabled because she has a record of impairment. The Court agrees. Whitfield has produced evidence adequate to survive summary judgment on the issue of whether she has a record of an impairment which substantially limits a major life activity.

Once again, EEOC Regulations and Interpretive Guidelines provide substantial instruction. The Regulations state, "Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The Interpretive Guidelines elaborate on this definition. First, "[t]he impairment indicated on the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R. Pt. 1630, App. § 1630.2(k). Secondly, "[t]here are many types of records that could potentially contain this information, including, but not limited to, education, medical, or employment records." *Id.*

Here that record, seen in the light most favorable to Whitfield, consists of her absence from work, both at Pathmark and generally, and her medical restrictions, as presented by her doctor's notes, along with any other indication of those medical restrictions. Among other things, the record does indicate that before the first alleged discriminatory act, Whitfield's doctor had told Pathmark her injuries were permanent.[16] B57. The medical restrictions Whitfield presented to Pathmark and of which Pathmark had a record are precisely those restrictions which she argues constitute substantial limitations on a major life

---

16. Whitfield's doctor gave Whitfield a note dated January 21, 1994 stating the injuries were permanent and should not work more than 12 hours each week. B57. In February 1994, Whitfield learned she was being taken off the schedule at Pathmark because of her work limitations.

activity. Because Whitfield has shown Pathmark had before it a record of an impairment which the Court has already held could substantially limit a major life activity, she has demonstrated a material issue of fact as to whether she satisfies this definition as well.

## IV. CONCLUSION

The Court will enter an order granting Whitfield's motion, vacating the Court's July 24, 1997, opinion except those portions treating "regarded as disabled" and "arbitration."