**Sally J. ABBOTT, Executrix for the Estate of Donald D. Abbott, and Janet I. Gabelt, Executrix of the Estate of Paul E. Gabelt, Appellants,**

v.

**ANCHOR GLASS CONTAINER CORP., a Delaware Corporation and Unit of Wesray Corp., a holding company; Globe Security Systems, Inc., a Delaware Corporation, Subsidiary of Kidde, Inc., a Delaware Corporation; Russell Watson, an individual; Richard Hosier, an individual; James A. Silbaugh, an individual; M.S.M. Consultants, Inc., a Florida Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued June 13, 2000.
Filed Aug. 23, 2000.

Christina K. Humyak, Pittsburgh, for appellants.

Edward A. Yurcon, Pittsburgh, for Anchor Glass, appellee.

Before: POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Fayette County on November 24, 1999. Appellants sought compensatory damages under the Pennsylvania Wrongful Death and Survival Acts in their individual capacities and as representatives of the estates of their husbands. Summary judgment was granted in favor of all defendants except security guard James Silbaugh and Globe Securities Systems, Inc. on February 27, 1996. A jury trial commenced and resulted in a verdict for the remaining defendants on October 22, 1999. After judgment was entered on November 24, 1999, appellants filed a timely appeal challenging the grant of summary judgment. Upon review, we affirm the order of the trial court.

¶ 2 Herein, appellants present the following issues:

A. Whether the trial court committed an abuse of discretion or error of law in granting the summary judgment motions of Defendants Anchor Glass Container Corporation, Russell Watson and Richard Hosier when the previous memorandum and order of Judge Wagner, also of the Court of Common Pleas of Fayette County, held that the question of whether the killer of Plaintiffs' Decedents was motivated by personal animosity is a question for the jury.

B. Whether the Trial Court committed an abuse of discretion or error of law in granting the Summary Judgment Motion of Defendants Anchor Glass Container Corporation, Russell Watson and Richard Hosier based upon the factual issues pre-

sented by Plaintiffs which require determination by a jury.

Appellants' brief, at 4.

¶ 3 Appellants are the executrices of the estates of their deceased husbands (Donald Abbot and Paul Gabelt) who were employed by Anchor Glass Container Corporation ("Anchor") at the time of their deaths. Their deaths were the result of an intentional shooting by a co-employee, Mansell Hammett. On March 16, 1993, Mr. Hammett was reprimanded by his supervisor Donald Abbott. In response to this reprimand, Mr. Hammett threatened Mr. Abbot's life if Mr. Abbot caused him to lose his job. Mr. Abbott reported this exchange to his supervisors, and a disciplinary meeting was called in Supervisor Paul Gabelt's office. In attendance at this meeting were Mr. Gabelt, Mr. Abbott, Mr. Hammett, Richard Hosier (a superintendent), Robert Bradley (a union representative), and William Shupe (a foreman). At this meeting Mr. Hammett stated that he was simply "kidding" when he made his threat to Mr. Abbot. Nonetheless, Mr. Hosier suspended Mr. Hammett and informed him to return the following week with his union representative.

¶ 4 Approximately one and one-half hours after Mr. Hammett left Anchor's premises he returned to the plant with a gun. Appellant subdued the security guard and proceeded to shoot and kill Mr. Abbott and Mr. Gabelt ("the decedents"). Mr. Hammett killed two additional supervisory personnel, Ralph Tomaro and John Coligan, and seriously wounded Mr. Hosier. Mr. Hammett concluded his rampage by taking his own life.

¶ 5 Appellants instituted the present action against multiple defendants based upon various theories of liability. In response to the complaint, Anchor, Mr. Hosier and Russell Watson[1] ("appellees") filed preliminary objections asserting immunity from suit based upon the Workmen's Compensation Act.[2] Judge Wagner overruled the preliminary objections, and appellees filed answers to the complaint and engaged in discovery. Thereafter, appellees filed motions for partial summary judgment based upon the Workmen's Compensation Act ("WCA"). Judge Franks ("trial court") granted the motions for partial summary judgment which effectively dismissed appellees from the case.

■ ¶ 6 We begin our analysis by addressing appellants' first argument that the trial court's granting of summary judgment improperly overruled Judge Wagner's previous order denying preliminary objections. Appellants base this argument upon the fact that appellees raised the issue of immunity based upon the WCA by way of preliminary objections that were denied by Judge Wagner. Appellants argue that the trial court was bound by Judge Wagner's decision and could not grant summary judgment based upon immunity granted by the WCA.

■ ¶ 7 While it is true that a trial judge should not place himself or herself in a position to overrule a decision by another judge of the same court in the same case, "this rule is not intended to preclude granting summary judgment following the denial of preliminary objections." *Rosenfield v. Pennsylvania Automobile Ins. Plan*, 431 Pa.Super. 383, 636 A.2d 1138, 1142 (1994) (citations omitted). "Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Goldey v. Trustees of the University of Pennsylvania*, 544 Pa. 150, 155–156, 675 A.2d 264, 267 (1996). "However, a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in the facts or the law clearly warrant a new

---

**1.** Mr. Watson was the plant manager at the time of the shootings.

**2.** 77 P.S. § 1 et seq.

look at the question." *Id.* (emphasis original).

■ ¶ 8 The present case involves preliminary objections and motions for summary judgment which differ in kind. "When reviewing preliminary objections the trial court looks to the pleadings, but, in considering a motion for summary judgment the trial court weighs the pleadings, depositions, answers to interrogatories, admissions and affidavits." *Rosenfield*, 636 A.2d at 1142. After Judge Wagner denied appellees' preliminary objections, appellees filed an answer to appellants' complaint, discovery commenced and eighteen depositions were taken. Thus, not only did the motions differ in kind, but also the record before the trial court was materially different from the record that was before Judge Wagner. Accordingly, the trial court did not improperly overrule Judge Wagner's prior order by granting summary judgment.

■ ¶ 9 Appellants' remaining arguments directly challenge the merits of the trial court's decision to grant the motion for summary judgment. Specifically, appellants challenge the trial court's finding that their exclusive remedy lie in the WCA. In disposing of appellants' remaining arguments, we shall apply our analysis separately to Anchor, Mr. Hosier and Mr. Watson. However, before continuing our analysis we note the following standard of review when faced with a challenge to the grant of summary judgment:

> Summary judgment is properly granted where 'the pleadings, depositions, answers to interrogatories, and admission[s] on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law'.... 'The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party'.... Summary judgment may be entered

only in those cases where the right is clear and free from doubt.

*Albright v. Fagan*, 448 Pa.Super. 395, 671 A.2d 760, 761–762 (1996)(quoting *Ducjai v. Dennis*, 540 Pa. 103, 113, 656 A.2d 102, 107 (1995) (citations omitted)). Keeping these principles in mind, we consider appellants' remaining arguments.

¶ 10 Beginning with the issue of Anchor's liability, we reiterate the fact that Anchor was the employer of Mr. Hammett, the decedents, Mr. Hosier and Mr. Watson. In addition, the shootings occurred on Anchor's premises. Regarding the applicability of the WCA, 77 P.S. § 481(a) provides the following:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(footnotes omitted). In explaining the legislative purpose of limiting an employee's right to sue in tort for injuries sustained in the course of employment, we stated the following:

> The Legislature ... enacted the Workmen's Compensation Act to provide employees with compensation for injuries sustained within the scope of their employment. In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment.

*Snyder v. Specialty Glass Products, Inc.*, 441 Pa.Super. 613, 658 A.2d 366, 369 (1995)(quoting *Kosowan v. MDC Industries, Inc.*, 319 Pa.Super. 91, 465 A.2d 1069, 1072 (1983)).

■ ¶ 11 Although the application of the WCA is far reaching, an exception to its application exists. This exception,

sometimes referred to as the "personal animus" or "third party attack" exception, is found in § 411 of the WCA, and states in pertinent part:

> ... The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; ...

77 P.S. § 411(1). "In order for an employee to set forth a valid cause of action against his employer under the personal animus exception, 'an employee must assert that his injuries are *not* work-related because he was injured by a co-worker for purely personal reasons.'" *Hammerstein v. Lindsay*, 440 Pa.Super. 350, 655 A.2d 597, 601 (1995)(emphasis original)(quoting *Kohler v. McCrory Stores*, 532 Pa. 130, 137–138, 615 A.2d 27, 30 (1992)). "Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed *because of the employment,* and the injured employee's remedy is exclusively under the [WCA]." *Id.* (emphasis original) (citation omitted). "[T]he lack of pre-existing animosity between the combatants strongly suggests that the motive for the attack was work-related and not because of reasons personal to the assailant." *Id.* (citation omitted). Moreover, "[i]f the third party would have attacked a different person in the same position as the injured employee, that attack falls outside the exception and is covered exclusively by the [WCA]." *Hershey v. Ninety–Five Assoc.*, 413 Pa.Super. 158, 604 A.2d 1068, 1069 (1992), appeal denied, 532 Pa. 651, 615 A.2d 341 (1992)(citing *Brooks v. Marriott Corp.*, 361 Pa.Super. 350, 522 A.2d 618 (1987)). Finally, we recognize the rebuttable presumption that an injury is work-related where it occurs on the employer's premises. *Kohler*, 615 A.2d at 30.

¶ 12 In the case *sub judice,* appellants failed to set forth facts which would indicate that the shootings of the decedents arose out of pre-existing animosity. In their attempt to demonstrate pre-existing animosity, appellants presented a memorandum that described a brief fight involving Mr. Hammett and a co-worker named Ronald Lopes that occurred in 1973. Appellants also provided a memorandum describing a 1973 meeting that occurred in response to the incident between Ronald Lopes and Mr. Hammett in which Mr. Hammett allegedly told Mr. Gabelt that he was "hard headed." In addition, appellants offered the testimony of various Anchor employees that generally characterized Mr. Hammett as quick tempered. In a further attempt to show pre-existing animosity, appellants provided the testimony of Ms. Abbot who testified that Mr. Abbot told her of some difficulty he was having with an employee whose name she did not remember. However, even viewing this evidence in the light most favorable to appellants, it provides no indication of any pre-existing animosity between Mr. Hammett and the decedents.

¶ 13 Further scrutiny of the record shows that the deposition testimony of appellants actually undercuts their position that the shootings arose out of pre-existing animosity. Appellants testified that Mr. Hammett did not socialize with either of the victims or their families outside of work. Moreover, appellants were unaware of any disputes between Mr. Hammett and the victims that occurred outside of work. In sum, appellants were unaware of any pre-existing animosity between Mr. Hammett and the decedents. Appellants' testimony regarding the relationships between Mr. Hammett and the decedents was corroborated by Mr. Hammett's wife in her deposition testimony.

¶ 14 Herein, the evidence indicates that the animosity between Mr. Hammett and the decedents was developed because of a work-related dispute that occurred on the day of Mr. Hammett's rampage. After receiving a reprimand from Mr. Abbot, Mr. Hammett threatened to kill Mr. Abbot if Mr. Abbot caused him to lose his job.

As a result of Mr. Hammett's threat, he was suspended from work at the conclusion of a disciplinary meeting. Shortly after receiving his suspension, Mr. Hammett returned to Anchor's premises with his gun and began his tragic rampage.

¶ 15 In addition to the evidence showing that the animosity between Mr. Hammett and the victims arose out of a work-related dispute, Mr. Hammett's decision to kill only supervisory personnel further supports a finding that the shooting deaths of the decedents were work-related. In addition to the decedents' deaths, Mr. Hammett wounded Richard Hosier and killed Ralph Tamaro and John Coligan. Although Mr. Hosier was in attendance at Mr. Hammett's disciplinary meeting, Mr. Tamaro and Mr. Coligan were in no way involved with Mr. Hammett's reprimand and did not attend the disciplinary meeting. Thus, Mr. Hammett's choice of victims indicated Mr. Hamlet's decision to kill supervisors by virtue of their positions within Anchor. As stated in *Hershey, supra,* "[i]f the third party would have attacked a different person in the same position as the injured employee, that attack falls outside the exception and is covered exclusively by the [WCA]." *Hershey,* 604 A.2d at 1069.

¶ 16 Given the above-mentioned facts coupled with the lack of evidence regarding any pre-existing animosity, we find the decedents' deaths were work-related and only compensable under the WCA as a matter of law. Accordingly, we find that the trial court correctly granted summary judgment in favor of Anchor.

¶ 17 Next, we address the propriety of the trial court's decision to grant summary judgment in favor of Mr. Watson and Mr. Hosier. As stated before, Mr. Watson was the plant manager at the time of the shootings. Mr. Hosier was a superintendent who was present at Mr. Hammett's disciplinary meeting and subsequently wounded by Mr. Hammett. Appellants argue that the co-employee immunity provisions of the WCA do not insulate Mr. Watson and Mr. Hosier from a suit based in common law since the "personal animus" exception found in § 411(1) of the WCA applies. Accordingly, appellants argue that the case should proceed against these two individuals under common law for their negligent acts.

¶ 18 For reasons stated previously, the "personal animus" exception found in § 411(1) of the WCA does not apply to the actions of Mr. Hammett and the decedents' deaths were work-related. Accordingly, the decedents' deaths are only compensable under the WCA. In addition, we note that it is undisputed that both Mr. Watson and Mr. Hosier were co-employees of the victims. On the day of the shootings, both Mr. Watson and Mr. Hosier were present at the work site and acted within their scope of employment.

¶ 19 As stated in 77 P.S. § 72,

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

In reading § 72 of the WCA in conjunction with relevant case law, this court came to the "inescapable, and uncontested, conclusion that a co-employee who is injured in the course of employment cannot hold another co-employee *liable for injuries occasioned by his or her 'act or omission' (negligence);* rather, such co-employee can only be held liable for injuries resulting from intentional acts." *Gardner v. Erie Ins. Co.,* 456 Pa.Super. 563, 691 A.2d 459, 463–464 (1997), affirmed, 555 Pa. 59, 722 A.2d 1041 (1999)(emphasis original). Therefore, in order for the appellants in the present case to succeed in a common law action, appellants were required to demonstrate that Mr. Watson and Mr. Hosier committed an intentional act that caused the deaths of the decedents.

¶ 20 Herein, appellants' allegations concerning Mr. Watson and Mr. Hosier sound

in negligence. In fact, appellants contend that it is not necessary to prove that the conduct of Mr. Watson and Mr. Hosier was intentional. However, even assuming for the sake of argument that Mr. Watson and Mr. Hosier were negligent as appellants alleged, appellants' allegations of negligence are not sufficient to overcome § 72 of the WCA since the victims' deaths were work-related and only compensable under the WCA. As dictated by § 72 of the WCA, appellants were required to demonstrate that Mr. Watson and Mr. Hosier committed an intentional act that caused the deaths of the victims. *See Gardner, supra.* As a matter of law, Mr. Watson. and Mr. Hosier are immune from a common law action based in negligence. Accordingly, we find that the trial court properly granted summary judgment in favor of both Mr. Watson and Mr. Hosier.

¶ 21 For the foregoing reasons, we affirm the order of the trial court.

¶ 22 Order affirmed.