Joan **FUGARINO**, Plaintiff,

v.

**UNIVERSITY SERVICES, Paul Lifschutz, and Michael Misero, Defendants.**

No. CIV.A. 00–CV–3234.

United States District Court, E.D. Pennsylvania.

Dec. 7, 2000.

---

George R. Szymanski, Law Offices of George R. Szymanski, Philadelphia, PA, for plaintiff.

Jonathan M. Petrakia, Heather Gelfand Ptasznik, Frey, Petrakis, Deeb & Blum, PC, Philadelphia, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

This is an employment discrimination case brought by Plaintiff Joan Fugarino ("Plaintiff") against Defendants University Services, Paul Lifschutz ("Lifschutz"), and Michael Misero ("Misero") (collectively "Defendants"). In her Complaint, Plaintiff alleges that Defendants unlawfully discriminated and retaliated against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("the PHRC"). In addition to the Title VII and PHRA claims, Plaintiff also alleges an intentional infliction of emotional distress ("IIED") claim against Defendants. Presently before the Court is Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons below, we will grant Defendants' Motion in part and deny it in part.

## BACKGROUND

Accepting all of Plaintiff's allegations as true, the relevant facts are as follows. In December 1998, Plaintiff began working for University Services as a Polysomnigraphic Technologist at its North Penn Sleep Disorder Center ("North Penn Center"). During Plaintiff's employment with University Services, Lifschutz was her immediate supervisor, and Misero was the manager of the entire North Penn Center. In March 1999, Lifschutz asked Plaintiff out on a date. Plaintiff refused. Thereafter, Lifschutz began to harass Plaintiff by constantly criticizing her work, publicly reprimanding her, searching her desk, and speaking badly of her to co-workers. In addition, Lifschutz made· one "obscene" phone call to Plaintiff while she was at work.

In response to this harassment, Plaintiff complained to Misero on five different occasions over the next several months. Despite these complaints, Misero took no action to address the situation. Ultimately, Misero discharged Plaintiff on June 30, 1999 for unstated reasons. On August 24, 1999, Plaintiff dual-filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). On March 27, 2000, Plaintiff received her right to sue notice, after which she commenced this lawsuit in June 2000.

## DISCUSSION

### I. *Legal Standard*

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief can be granted. *See Morse v.*

*Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Cos., Inc.*, 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted).

## II. *Individual Liability under Title VII*

■ First, Defendants move to dismiss the federal discrimination claims against Lifschutz and Misero on grounds that individual employees cannot be held liable under Title VII. Plaintiff does not attempt to refute this statement of law, nor could she. It is well-established that individual employees are not liable under Title VII. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 183–84 (3d Cir.1997); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir.1996); *Heap v. ICM America, LLC*, No. CIV.A. 99–4278, 2000 WL 1022955, at *2 (E.D.Pa. July 17, 2000). Accordingly, we will grant Defendants' Motion with respect to Title VII claims against Lifschutz and Misero.

## III. *Retaliation Claims: Failure to Exhaust*

■ Second, Defendants argue that Plaintiff has failed to exhaust her administrative remedies with respect to the retaliation claim. In particular, Defendants note that Plaintiff's EEOC charge of discrimination indicates that her cause of discrimination was "sex" and that the "retaliation" box was not checked. Defendants also note that the narrative in the EEOC charge does not specifically refer to retaliation. We find Defendants' reading of the administrative charge of discrimination too narrow.[1]

■ In general, an employee must exhaust all applicable administrative remedies by filing a charge of discrimination with the EEOC before he may file suit under Title VII. *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). It follows that the scope of the later civil complaint is "limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F.Supp.2d 405, 409 (E.D.Pa.1998); *see also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996); *Bailey v. Storlazzi*, 729 A.2d 1206, 1215–16 (Pa.Super.1999). The EEOC charge is not, however, a "blueprint" for the subsequent litigation. *Reddinger*, 4 F.Supp.2d at 409. Rather, the exhaustion test is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol*, 82 F.3d at 1295 (quoting *Waiters*, 729 F.2d at 237).

■ Although Defendants are correct that Plaintiff's EEOC charge does not specifically refer to retaliation, we find that a retaliation claim could "reasonably be expected to grow out of" Plaintiff's charge. Plaintiff alleged in her EEOC charge that Misero failed address any of her complaints about being sexually harassed and later fired her without explanation. (Def. Mot. at Ex. B). Plaintiff also generally stated that she believed she was discriminated against in violation of Title VII. (*Id.*). Finally, Plaintiff alleges in her Complaint that she filed a charge of "discrimination and retaliation" with the EEOC and received a right to sue notice pursuant to that filing. (Compl. at ¶¶ 3–4). Taking all of Plaintiff's allegations as true, we conclude that Plaintiff has sufficiently demonstrated exhaustion of her administrative

---

1. Although generally courts may not look beyond the complaint in deciding a motion to dismiss under Rule 12(b)(6), they may do so to examine matters of public record referenced or incorporated in the complaint. Because Plaintiff's EEOC charge of discrimination meets these criteria, we may properly consider it. *See, e.g., Shannon v. City of Philadelphia*, No. CIV.A. 98–5277, 1999 WL 126097, at *2 n. 3 (E.D.Pa. Mar.5, 1999) (considering EEOC charge and right to sue letter); *Arizmendi v. Lawson*, 914 F.Supp. 1157, 1160–61 (E.D.Pa.1996) (same).

remedies to withstand the present motion. *See, e.g., Fosburg v. Lehigh Univ.,* No. CIV.A. 98–864, 1999 WL 124458, at *5 (E.D.Pa. Mar.4, 1999) (finding acts alleged within scope of EEOC charge and denying motion to dismiss); *Reddinger,* 4 F.Supp.2d at 409–10 (same); *Page v. ECC Mgmt. Servs.,* CIV.A. No. 97–2654, 1997 WL 762789, at *3 n. 6 (E.D.Pa. Dec.7, 1997) (same). As a result, we will deny Defendants' Motion with respect to Plaintiff's retaliation claims.

## IV. *Quid Pro Quo Claims: Failure to State a Claim*

■ Next, Defendants move to dismiss Plaintiff's quid pro quo discrimination claim. Preliminarily, we observe that there is some confusion over exactly what type of discrimination claim Plaintiff is asserting: a quid pro quo or a hostile work environment claim. Defendants initially moved to dismiss Plaintiff's claim on grounds that it did not state a hostile work environment claim. However, after reviewing Plaintiff's own characterization of her claim in her Response to the Motion to Dismiss, Defendants modified their argument so to contend that Plaintiff failed to state a quid pro quo claim. (Def.Reply, *passim*). Based on our reading of the Complaint and the briefings, we think that the claim asserted by Plaintiff is properly characterized as a quid pro quo claim, and we will evaluate it as such.[2]

■ To state a prima facie claim for quid pro quo sexual harassment, a Plaintiff must allege that an individual's submission to or rejection of "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" is (1) made an explicit or implicit term or condition of employment or (2) used as the basis for employment decisions affecting the individual. *Bonenberger v. Plymouth Township,* 132 F.3d 20, 27 (3d Cir.1997) (citing *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296 (3d Cir.1997)). Defendants argue that none of the alleged harassment by Lifschutz rises to the level of a "sexual advance" and that Plaintiff did not suffer an adverse employment action. We disagree.

■ First, Plaintiff alleged that Lifschutz asked her out on a date on two occasions, once while he was making an otherwise obscene phone call to her. (Compl. at ¶ 13). While Defendants attempt to distinguish this activity from the type of sexual advance contemplated by the law, their argument involves assumptions and characterizations of facts not appropriately considered when evaluating a motion to dismiss. For purposes of a 12(b)(6) motion, Plaintiff has adequately alleged that she was subjected to sexual advances and/or conduct of a sexual nature.

■ Second, Plaintiff alleged that she was discharged by Misero because, among other things, she spurned the sexual ad-

---

**2.** We also recognize that the United States Supreme Court has de-emphasized the distinction between quid pro quo and hostile work environment sexual harassment claims in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The Court instead focused on the distinction between "cases involving a threat which is carried out and offensive conduct in general." *Ellerth,* 524 U.S. at 753, 118 S.Ct. 2257. A threat is carried out when it results in a tangible employment action, which is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different re-

sponsibilities or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257. When there is a tangible employment action, the claim is—under the past formulation—known as a quid pro quo claim, and an employer is automatically liable for a supervisor's harassment. *Id.* at 765, 118 S.Ct. 2257. Conversely, when no tangible employment action occurs, a hostile work environment claim is presented. For such a claim to be actionable, the harassment must be severe and pervasive, and an employer may avoid vicarious liability by successfully raising an affirmative defense. *Id.* See also *Graves v. County of Dauphin,* 98 F.Supp.2d 613, 622 n. 8 (M.D.Pa.2000) (discussing *Ellerth* and *Faragher*).

vances of Lifschutz. (Compl. at ¶ 17). Defendant argues that this qualifying employment action cannot be imputed to Lifschutz for purposes of a quid pro quo claim because the actual termination was done by Misero, and Plaintiff has not alleged that Lifschutz played any role in the firing. However, Plaintiff has alleged that Lifschutz and Misero were "friends and confidantes [sic]." (Compl. at ¶ 16). Thus, a fair reading of the Complaint could, quite plausibly, suggest that Lifschutz and Misero were in collaboration and that Misero's firing of Plaintiff was because Plaintiff refused Lifschutz's sexual entreaties.[3] This allegation is sufficient, and we will accordingly deny Defendants' Motion with respect to the quid pro quo claims.

## V. IIED Claim

Finally, Defendants argue that Plaintiff's IIED claim must be dismissed on two separate grounds: (1) because IIED claims are barred by the Pennsylvania Workmen's Compensation Act ("the WCA") and (2) because Plaintiff has failed to state a cognizable claim for IIED. We address each contention in turn.

### A. Exclusivity of the WCA

In general, the WCA provides the exclusive remedy for all of employees' work-related injuries. *See* 77 P.S. § 481(a). However, there is an exception to that general rule for intentional torts committed by third parties. *See* 77 P.S. § 411(1). The question, then, is whether Plaintiff's claim falls within the statutory exception.

The WCA's statutory exception applies in very limited circumstances. *See, e.g., Matczak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933 (3d Cir.1997) (holding that WCA bars IIED claims arising out of employment relationship). Reflective of those limited circumstances, the United States Court of Appeals for the Third Circuit recently stated:

> Because [sexual harassment] is like other workplace hazards, we suspect that Pennsylvania would find IIED claims based on this kind of harassment to be preempted. But we cannot be sure, and we express no opinion as to whether an IIED claim for harassment more disconnected from the work situation would be preempted, for example where a supervisor sexually assaulted an employee or stalked her outside of work.

*Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 n. 16 (3d Cir.1999). Despite the narrowness of the exception, courts' application of the so-called "personal animus" or "third-party attack" exception has varied. *Compare Chisolm v. National Corp. for Hous. P'ships,* No. CIV.A. 99–3602, 2000 WL 307245 (E.D.Pa. Mar.22, 2000) (IIED claim barred by WCA because WCA is sole remedy for injuries sustained during employment); *Richardson v. Arco Chem. Co.,* No. CIV.A. 95–6185, 1996 WL 482911 (E.D.Pa. Aug.26, 1996) (same, because defendants' statements only motivated by racial and sexual bias, not personal animosity); *Hicks v. Arthur,* 843 F.Supp. 949, 958 (E.D.Pa.1994) (same, because racial harassment stemmed from general racist attitudes, not personal animus); *Parker v. DPCE, Inc.,* CIV.A. No. 91–4829, 1992 WL 501273 (E.D.Pa. Nov.3, 1992) (same, because defendants' racist comments made within context of employment) *with Wils v. Phillips,* No. CIV.A. 98–5752, 1999 WL 200674 (E.D.Pa. Apr. 8, 1999) (IIED claim within WCA exception

---

**3.** Defendants' reasoning to the contrary is specious. Under Defendants' rationale, two employees could effectively insulate themselves from quid pro quo liability by each performing only one constituent part of the discriminatory act. For example, one employee could make sexual advances toward a co-worker. If the co-worker refused, the harassing employee could then directly or indirectly request another employee to fire that co-worker. Defendants' argument overlooks the nexus between the harassment and the employment decision; regardless of who actually does the firing, the refused sexual advances are still the "basis for [the] employment decision[ ] affecting [the] individual," *Bonenberger,* 132 F.3d at 27.

because defendant sexually harassed plaintiff "in and out of the workplace"); *Price v. Philadelphia Elec. Co.*, 790 F.Supp. 97 (E.D.Pa.1992) (same, because, in addition to racial epithets, defendants preyed on plaintiff's personal fear of deer hunting); *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 482 (1997) (same, because defendant's sexual propositions and related behavior were personal and directed toward plaintiff); *Schweitzer v. Rockwell Int'l*, 402 Pa.Super. 34, 586 A.2d 383, 391 (1990) (same, because supervisor's sexual harassment of employee was "personal in nature and not part of the proper employer/employee relationship."). Indeed, there is disagreement over whether "personal animus" misdescribes the nature of the exception itself. *Compare Hettler v. Zainy Brainy, Inc.*, No. CIV.A. 99–3879, 2000 WL 1468550, at *5 (E.D.Pa. Sept.27, 2000) (stating that "personal animus" of person committing intentional act is a necessary element to the exclusivity exception) *with Krasevic v. Goodwill Indus. of Cent. Pa., Inc.*, 764 A.2d 561, 564–65 (Pa.Super.2000) ("we conclude that a showing of personal animus is not strictly required to implicate the third party attack exception.").

■ Notwithstanding the various interpretations, the critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship. In this case, it appears that most of Lifschutz's harassment—reprimands, criticisms, and searching of Plaintiff's desk—clearly was work-related. In addition, even those acts potentially outside the employment context—asking for a date and making an obscene phone call—

were directed at Plaintiff while at work. Thus, it appears that the WCA exception would not apply based on the Plaintiff's allegations in the Complaint.[4] However, we need not decide this question because, even assuming the third-party attack exception does apply, Plaintiff has failed to state a cognizable IIED claim.

### B. Cognizable Claim

■ To state a claim for IIED, a plaintiff must show extreme and outrageous conduct that is deliberate or reckless and causes severe emotional distress. *See, e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988). The conduct complained of must be so outrageous, and so extreme in degree, as to "go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Clark v. Township of Falls*, 890 F.2d 611, 623 (3d Cir.1989) (citations omitted). Moreover, conduct arising in the employment context "will rarely rise to the level of outrageousness necessary to support an [IIED] claim." *Hampton v. Tokai Fin. Servs., Inc.*, No. CIV.A. 98–5074, 1999 WL 83934, at *3 (E.D.Pa. Feb.18, 1999) (citing *Cox*, 861 F.2d at 390); *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990).

■ Granting every inference to Plaintiff, her allegations still do not suffice to state a cognizable IIED claim. The sum total of Plaintiff's allegations are that Lifschutz (1) criticized her; (2) publicly reprimanded her; (3) disparaged her professionally and personally to others; (4) searched her desk at work; (5) asked her out on a date twice; and (6) made a single "obscene" phone call to her at work. Boorish and improper as this behavior may be, it simply does not rise to the level

---

4. In support of her argument that the third-party attack exception applies, Plaintiff cites one case: *Subbe–Hirt v. Baccigalupi*, 94 F.3d 111 (3d Cir.1996). *Subbe–Hirt* is plainly distinguishable from this case because it involved New Jersey, not Pennsylvania, law.

*Id.* Moreover, it appears that the exclusivity exception contained in the New Jersey workers' compensation statute at issue in *Subbe–Hirt* differs materially from the analogous exception in the WCA. *Compare* N.J. Stat. Ann. 34:15–8 *with* 77 P.S. § 411(1).

of outrageousness or atrocity necessary to state an IIED claim. *See, e.g., Andrews,* 895 F.2d at 1487 (sexual harassment allegations insufficient to maintain IIED claim); *Hampton,* 1999 WL 83934, at *3 (dismissing IIED claim arising from racist remarks); *Coney v. Pepsi Cola Bottling Co.,* No. CIV.A. 97–2419, 1997 WL 299434, at *1 (E.D.Pa. May 29, 1997) (dismissing IIED claim and noting that "highly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct."); *Parker,* 1992 WL 501273, at *12–*13 (dismissing IIED claim arising from racial harassment); *Ceesay v. Miller, Mason & Dickenson,* CIV.A. No. 90–2800, 1990 WL 121218, at *7 (E.D.Pa. Aug.15, 1990) (same, arising from sexual and racial harassment). In addition, as noted above, with the possible exception of the phone call and request for a date, every act was within the employment context. *See Andrews,* 895 F.2d at 1487; *Cox,* 861 F.2d at 390. Consequently, we will grant Defendants' Motion with respect to Plaintiff's IIED claim.

## CONCLUSION

For the foregoing reasons, we will grant Defendants' Motion with respect to Title VII claims against Misero and Lifschutz and with respect to the IIED claim. We will deny Defendants' Motion with respect to Plaintiff's quid pro quo and retaliation claims. An appropriate order follows.

## *ORDER*

AND NOW, this —— day of December, 2000, upon consideration of Defendant's Motion to dismiss (Document No. 3), and Plaintiff's Response thereto, it is hereby ORDERED that Defendant's Motion is GRANTED in part and DENIED in part.

Defendant's Motion if GRANTED with respect to Title VII claims brought against Defendants Misero and Lifschutz individually (Count I in part) and with respect to the intentional infliction of emotional distress claim brought against all Defendants (Count III in its entirety).

Defendant's Motion is DENIED with respect to Title VII and PHRA discrimination and retaliation claims brought against Defendant University Services (Counts I and II in part.)