Jennifer L. HANCUFF, Plaintiff,

v.

PRISM TECHNOLOGIES and ASSEM-
BLIES, LLC d/b/a Prism Technology
and Assemblies, LLC, Carlisle Compa-
nies, Inc., and Carlisle Engineered
Products, Inc, and Joseph Difucci, De-
fendants.

Deborah L. Gunsallus, Plaintiff,

v.

Prism Technologies and Assemblies,
LLC d/b/a Prism Technology and As-
semblies, LLC, Carlisle Companies,
Inc., and Carlisle Engineered Prod-
ucts, Inc, Defendants.

Michelle Heckman–Cottrell, Plaintiff,

v.

Prism Technologies and Assemblies,
LLC d/b/a Prism Technology and As-
semblies, LLC, Carlisle Companies,
Inc., and Carlisle Engineered Prod-
ucts, Inc, Defendants.

Civil Nos. 01–274 Erie, 01–
312 Erie, 03–23 Erie.

United States District Court,
W.D. Pennsylvania.

Feb. 24, 2005.

Brian D. Walters, Esq., Brian D. Walters & Associates, Pittsburgh, PA, for Plaintiffs Jennifer L. Hancuff, Deborah L. Gunsallus, and Michelle Heckman–Cottrell.

Ruben Acosta, Esq., Williams Acosta, Krystal N. Lyons, Esq., Detroit, MI, Gary Eiben, Esq., The McDonald Group, Erie, PA, for Defendant Prism Technologies.

Arthur D. Martinucci, Esq., Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for Defendant Joseph Difucci.

Richard A. Lanzillo, Esq., Knox, McLaughlin, Gornall & Sennett, Erie, PA,

for Defendant Carlisle Engineered Products, Inc., Carlisle Companies Inc.

### Opinion

COHILL, District Judge.

Following a status conference held on February 10, 2005, the Court issued an Order granting Defendant Prism Technologies and Assemblies, LLC's ("Prism") Motion to Dismiss Plaintiff's Battery and Intentional Infliction of Emotional Distress Claims filed in each of the above-entitled actions (**Doc. 18** in Civil No. 03–23 Erie; **Doc. 26** in Civil No. 01–312 Erie; and **Doc. 32** in Civil No. 01–274 Erie). This written opinion is issued in support of the Order granting the motions to dismiss.

### 1. Background

These are separate employment discrimination actions alleging violations of Title VII, COBRA, and ERISA, as well as state law tort claims. Plaintiffs allege that they were each discriminated against on the basis of their sex.

### Title VII Claims

All three Plaintiffs include separate counts alleging Title VII violations of hostile work environment (*Hancuff Am. Compl.* Count I; *Gunsallus Am. Compl.* Count I; *Heckman–Cottrell Compl.* Count I) and disparate treatment (*Hancuff Am. Compl.* Count IV; *Gunsallus Am. Compl.* Count IV; *Heckman–Cottrell Compl.* Count II). In addition, Plaintiffs Hancuff and Gunsallus allege Title VII violations claiming quid pro quo harassment (*Hancuff Am. Compl.* Count II; *Gunsallus Am. Compl.* Count II) and retaliation (*Hancuff Am. Compl.* Count III; *Gunsallus Am. Compl.* Count III).

### State Law Tort Claims

Plaintiffs Deborah Gunsallus and Jennifer Hancuff bring a state law claim of battery based on injuries resulting from the intentional exposure to a toxic glue. (*Hancuff Am. Compl.* Count VI; *Gunsal-*

*lus Am. Compl.* Count V.) Ms. Hancuff brings a separate count alleging battery against Defendant Joseph Difucci based on his intentional and forceful touching, restraining and attempting to kiss Ms. Hancuff without her consent. (*Hancuff Am. Compl.* Count VI.) All three Plaintiffs also bring a state law claim of intentional infliction of emotional distress. (*Hancuff Am. Compl.* Count VII; *Gunsallus Am. Compl.* Count VI; *Heckman–Cottrell Compl.* Count III.)

### Remaining Claims

Ms. Hancuff asserts claims of violations of COBRA and ERISA together in one Count. (*Hancuff Am. Compl.* Count VIII.) Finally, all three Plaintiffs bring a claim for vicarious liability and direct liability against the Carlisle Defendants. (*Hancuff Am. Compl.* Count IX; *Gunsallus Am. Compl.* Count VII; *Heckman–Cottrell Compl.* Count IV.)

Defendant Prism seeks dismissal of Plaintiffs' state law claims of battery and intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the exclusive remedies for an employee alleging such claims are Pennsylvania's Workmen's Compensation Act, 77 Pa.C.S.A. § 1, *et seq* ("PWCA"), and Pennsylvania's Occupational Disease Act ("ODA").

### 2. Standard of Review

A motion to dismiss pursuant to Federal Rule 12(b)(6), tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99); *see also Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985).

"A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

### 3. Discussion

#### a. Pennsylvania Workmen's Compensation Act

The PWCA provides the exclusive remedy for an employee's work related injury, stating in relevant part as follows:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 PA.C.S.A. § 481(a). The Pennsylvania Superior Court explained the legislative purpose of the PWCA's limitation on an employee's right to sue in tort for injuries sustained in the course of employment as follows:

> The Legislature ... enacted the Workmen's Compensation Act to provide employees with compensation for injuries sustained within the scope of their employment. In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment.

*Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa.Super.2000) (quoting *Snyder v. Specialty Glass Products, Inc.*, 441 Pa.Super. 613, 658 A.2d 366, 369 (1995)). A section 301(c) "injury" under the PWCA, as well as related terms, is defined as follows:

**411. "Injury," "personal injury," and "injury arising in the course of his employment" defined**

(1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employee, regardless of his previous physical condition, *arising in the course of his employment* and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; ....

77 PA.C.S.A. § 411(1) (emphasis added).

### *"Personal Animus" or "Third-Party Attack" Exception*

"[T]he PWCA does recognize a limited exception, known as the "personal animus" or "third party attack" exception." *Overall v. University of Pennsylvania*, 2003 WL 23095953, *9 (E.D.Pa. Dec. 19, 2003). This exception permits claims for "employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 (3d Cir.1999). Specifically, the exception is stated in the statute as follows:

> The term injury arising in the course of his employment, as used in this article, *shall not include an injury caused* by an act of a third person intended to injure the employee because of reasons personal to him, and not directed

against him as an employee or because of his employment[.] .

77 Pa.C.S.A. § 411(1)(emphasis added).

 The Pennsylvania Superior Court, quoting the Pennsylvania Supreme Court, explained the exception as follows:

" 'In order for an employee to set forth a valid cause of action against his employer under the personal animus exception, "an employee must assert that his injuries are not work-related because he was injured by a co-worker for purely personal reasons." ' "

*Id.* at 1224 (quoting *Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597, 601 (1995), quoting *Kohler v. McCrory Stores,* 532 Pa. 130, 615 A.2d 27, 30 (1992)). " 'Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed because of the employment, and the injured employee's remedy is exclusively under the [WCA].' " *Abbott,* 758 A.2d at 1224 (citation omitted). However, the "lack of pre-existing animosity between the combatants strongly suggests that the motive for the attack was work-related and not because of reasons personal to the assailant." *Id.* (citation and quotation omitted). "Moreover, [i]f the third party would have attacked a different person in the same position as the injured employee, that attack falls outside the exception and is covered exclusively by the [WCA]." *Id.* (citation and quotation omitted) " 'Finally, we recognize the rebuttable presumption that an injury is work-related where it occurs on the employer's premises.' " *Id.* (quoting *Kohler,* 615 A.2d at 30).

### b. The Parties' Arguments

All three Plaintiffs state their Intentional Infliction of Emotional Distress Claims as follows:

[ ] Plaintiff believes and avers that Defendants [Prism and the Carlisle de-

fendants] through their agent [Defendant Difucci] exhibited extreme and outrageous conduct, as identified in this complaint, and were intentional or reckless and caused Plaintiff emotional and physical harm as identified in [a prior paragraph] of this Complaint.

(*Hancuff Am. Compl.* ¶ 75; *Gunsallus Am. Compl.* ¶ 73; *Heckman–Cottrell Compl.* ¶ 64.)

Plaintiffs Hancuff and Gunsallus state their battery claims as follows:

[ ] Defendants, through its employee agent, Mr. Difucci and others did intentionally cause Plaintiff to be exposed to toxic chemicals in the promoter (glue) such that Plaintiff inhaled said promoter. Defendants took no action to prevent or limit Plaintiff's exposure to the fumes, including the issuance of filter masks and/or the introduction of sufficient ventilation, despite the fact that Defendants knew or should have known that said chemicals were dangerous and toxic to Plaintiff without proper protection.

[ ] As a result of Defendants' intentional acts, Plaintiff suffered permanent injuries to her brain, nervous system, circulatory system and lungs. In addition, Plaintiff has suffered dizziness, confusion, memory loss, nausea and emotional disturbance all of which are continuing and on-going. Finally, Plaintiff sustained the damages [ ] identified in [a prior paragraph] of this Complaint.

(*Hancuff Am. Compl.* ¶¶ 71–72; *Gunsallus Am. Compl.* ¶¶ 70–71.)

Prism argues that the plain language of the state law tort claims alleged in Plaintiffs' Amended Complaints demonstrate that the injuries they suffered arose in the course of their employment with Prism and thus Plaintiffs exclusive remedy is under the PWCA. Prism further argues that

the "personal animus" exception does not apply to Plaintiffs' claims.

Plaintiffs argue that the injuries did not occur in the course of employment and are not work-related, and thus are not covered by the exclusivity of the PWCA. That is, Plaintiffs argue that the "personal animus" exception language of the statute applies to their claims.

Plaintiffs argue that the factual allegations of sexual harassment in their cases in and of themselves demonstrate a "personal animus" and thus their injuries are by definition caused by an act of a third party because of reasons personal to the Plaintiffs and not directed against the Plaintiffs as employees or because of their employment. 77 Pa.C.S.A. § 411(1) (*see also Plaintiffs' Brief in Response*, at 4 (implying that sexual harassment equals pre-existing animus).) Therefore, Plaintiffs argue that they have sufficiently alleged claims to survive a motion to dismiss.

In addition, they argue in the alternative that deciding whether the state law tort claims are preempted by the PWCA is a fact-intensive evaluation that should not be decided until discovery is completed. Thus, they argue that it is premature to decide the issue on a motion to dismiss. Plaintiffs assert that until discovery is complete "additional facts about the nature of the cause [of] injury, i.e., whether there was pre-existing animosity between the Defendant Joe Difucci and Plaintiffs, could be uncovered." (*Plaintiffs' Brief in Response*, at 5.)

### c. Analysis

 Based on the above recitation of the law, Plaintiffs' claims for intentional infliction of emotional distress and battery are nominally pre-empted by the PWCA since as alleged Plaintiffs' injuries arose during the course of their employment with Prism. "The exclusivity provision of [the PWCA] statute bars claims for 'intentional and/or negligent infliction of emo-

tional distress [arising] out of [an] employment relationship.'" *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir.1997) (quoting *Dugan v. Bell Telephone of Pa.*, 876 F.Supp. 713, 724 (W.D.Pa.1994).)

As set forth in the complaints the intentional exposure to toxic fumes and the outrageous conduct of Difucci in intentionally inflicting emotional distress occurred at the workplace. Plaintiffs thus must show that their claims fall within the exception to the exclusivity of the PWCA.

Plaintiffs claim that their injuries arose out of the "pre-existing animosity" (*i.e.*, personal animus) of Defendant Difucci thereby falling outside of the PWCA. (*Plaintiffs' Brief in Response*, at 4.) Specifically, Plaintiffs cite the following allegations from their complaint to show that the state law tort claim injuries did not arise in the course of employment:

On or about September 25, 1999, Plaintiff went to the office kitchen to get some coffee and Joe Difucci told Plaintiff that she "looked good" and then he grabbed Plaintiff and tried to kiss her on the mouth, against her will. Plaintiff attempted to resist this advance and subsequently fled the area.....

Plaintiff believes that Mr. Difucci's failure to provide parts to her workstation and failure to take actions to protect her from the toxic fumes were the result of the failure of Plaintiff to submit to Difucci's sexual advances.....

(*Plaintiffs' Brief in Response*, at 5 (quoting *Hancuff Am. Compl.*, at ¶¶ 25, 18; and citing *Gunsallus Am. Compl.*, at ¶¶ 8–11, 16; and *Heckman–Cottrell Compl.*, at ¶¶ 8–16).) Plaintiffs explain that the allegations show that Mr. Difucci intentionally committed harassing acts "in pursuit of his purely personal goal of sexual gratification with these women." (*Plaintiffs' Brief in Response*, at 5.)

In discussing the personal animus exception in a sexual harassment context the United States Court of Appeals for the Third Circuit noted that cases addressing this issue have gone both ways, some courts permitting claims to go forward, while other courts under similar circumstances find the claims to be preempted by the PWCA. *Durham,* 166 F.3d at 160 (citing cases). *See also* cases collected in *Overall,* 2003 WL 23095953, *10 and *Fugarino v. Univ. Servs.,* 123 F.Supp.2d 838, 843–844 (E.D.Pa.2000). In a footnote the Third Circuit Court of Appeals further elaborated on this issue as follows:

> Sexual harassment is a well-recognized workplace problem, the kind of thing employers must be prepared to combat. Because it is like other workplace hazards, we suspect that Pennsylvania would find [intentional infliction of emotional distress] claims based on this kind of harassment to be preempted. But we cannot be sure, and we express no opinion as to whether an [intentional infliction of emotional distress] claim for harassment more disconnected from the work situation would be preempted, for example where a supervisor sexually assaulted an employee or stalked her outside of work.

*Durham,* 166 F.3d at 160 n. 16.

We agree with the Third Circuit Court's suspicion that an "ordinary" sexual harassment claim occurring in the workplace would be preempted by the PWCA. *Id.* The *Durham* Court stated that it understood "Pennsylvania law to extend worker's compensation preemption to personal animosity that develops from work-related events" and that sexual harassment is an "understood problem in the workplace." *Durham,* 166 F.3d at 160 n. 16. As noted, Plaintiffs' allegations all concern events that occurred in the workplace while the Plaintiffs were at work. There are no allegations that Difucci had any relationship with any of the Plaintiffs outside of the workplace. Difucci's conduct appears to be motivated by sexual bias, not a personal animosity. Thus, we find that Plaintiffs' claims are preempted by the PWCA.

■ The fact that a plaintiff alleges that she was sexually harassed by another individual is, in the ordinary sense of the word, "personal." To use the ordinary sense to determine if the exception applies in a sexual harassment case would be to effectively rule that sexual harassment claims are presumptively excepted from the PWCA. However, the application of the exception does not rest *solely* on whether the actor was motivated by a personal animus or whether the conduct was purely personal. Instead, the inquiry also concerns the relationship of the acts against the plaintiff as an employee or because of the plaintiff's employment. Put another way, the "critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship.'" *Overall,* 2003 WL 23095953, *9 (quoting *Fugarino,* 123 F.Supp.2d at 844).

We reject a *per se* rule that the personal animus/third-party attack exception applies in any case of sexual harassment between two individuals. Pennsylvania law presumes that an injury is work-related where it occurs, as it did in the present cases, on the employer's premises. Plaintiffs have set forth nothing more than repeating their allegations of sexual harassment that occurred at the workplace in support of their argument to remove their cases from the PWCA. The allegations involve the "common workplace hazard" of sexual harassment and are preempted by the PWCA. *McGovern v. Jack D's, Inc.,* 2004 WL 632703, *4 (E.D.Pa. Feb 25,

2004) (citing *Durham,* 166 F.3d at 160 n. 16).

Had the sexual harassment alleged here been "more disconnected from the work situation" it is possible that the "third-party attack" exception would apply. *Durham,* 166 F.3d at 160 n. 16. However, we express no opinion on this issue as we conclude that the sexual harassment here is connected to the work situation.

### Whether Further Discovery is Necessary

██ Plaintiffs argue that the apparent split in the cases referred to by the *Durham* Court is evidence that fact-intensive evaluation must be conducted before determining whether preemption applies. Thus, Plaintiffs argue that it is premature to decide this issue on a motion to dismiss as "additional facts about the nature of the cause [of] injury, i.e., whether there was pre-existing animosity between the Defendant Joe Difucci and Plaintiffs, could be uncovered." (*Plaintiffs' Brief in Response,* at 5.)

We disagree that we cannot decide this issue without more extensive discovery. While we do not rule out the possibility that in some cases it would be premature to decide a similar issue under a different factual circumstance, the present allegations show that dismissal at this stage of the proceedings is appropriate. Plaintiffs do not provide reasoning to substantiate their request for discovery before disposition of this motion, nor do they specify the facts they intend to discover in order to effectively oppose Prism's motion.

Here, Plaintiffs argue that they may uncover facts showing pre-existing animosity between Difucci and Plaintiffs. However, Plaintiffs are unable to allege the nature or form of this undiscovered animosity, presumably because it does not include any facts of which the Plaintiffs have personal knowledge. Had facts existed that showed Difucci's personal animosity towards each of the Plaintiffs outside the workplace or unrelated to the Plaintiffs' employment, such facts would be known by the Plaintiffs. Thus, Plaintiffs would be capable of alleging such facts in their complaints or in their reply briefs. Plaintiffs, however, have failed to set forth any such facts and have failed to offer any more than speculation that they will uncover facts to support their argument.

At the status conference, counsel for Plaintiffs also explained that discovery is so far incomplete as to certain aspects of the toxic tort claim. For example, Defendants have not turned over photographs of the interior of the plant, the dimensions of the plant, the location of the machine that used the glue, the ventilation methods used by Defendants, and other items. None of these discovery items are relevant to the "third-party attack" exception.

It appears that the only possible uncovered fact of pre-existing animosity would have to be a secret intention in the mind of Difucci. Plaintiffs do not allege such a secret intention, nor do we think such a secret intention would remove this case from the exclusivity of the PWCA. We note that when Defendant Difucci, and others, are deposed in this case, questioning under the Federal Rules of Civil Procedure would permit examination into these areas even with dismissal of the state law tort claims as Plaintiffs' Title VII claims survive and involve the same conduct.

### The Heath Decision

According to Plaintiffs, the Pennsylvania Supreme Court in *Heath v. WCAB,* 860 A.2d 25 (Pa.2004), held that "psychic injuries that result from sexual harassment are not an injury that can be compensated under the WCA if they fall within the personal animus exception to the WCA." (*Plaintiffs' Brief in Response,* at 7.) Plaintiffs further argue that after *Heath* the District Court cases that barred intention-

al infliction of emotional distress claims under the exclusivity bar of the PWCA are no longer "helpful" in light of the *Heath* decision requiring courts to analyze the facts when the "third-party attack" exception is raised. (*Plaintiffs' Brief in Response*, at 7–8.)

As recognized by Plaintiffs, the primary import of the *Heath* decision was its conclusion "that the 'personal animus' exception in Section 301(c) of the Act does not implicate subject matter jurisdiction." *Heath*, 860 A.2d at 30. Ultimately, the *Heath* Court found that "the exception should have played no part in the Commonwealth Court's review in the present case." *Heath*, 860 A.2d at 30. Far from making a statement that is applicable to the present case, the *Heath* Court explicitly stated that "[i]n light of our disposition, *we do not address* and *express no opinion* on the meaning or application of the "personal animus" exception in these circumstances." *Heath*, 860 A.2d at 31 n. 3 (emphasis added). Thus, because the Pennsylvania Supreme Court determined that the Commonwealth Court erred in raising the "personal animus" exception *sua sponte*, the Pennsylvania Supreme Court likewise had nothing to say on the issue. Accordingly, Plaintiffs conclusions with regard to *Heath's* impact on the "personal animus" exception are overstated.

### d. The Pennsylvania Occupational Diseases Act

Both parties cite *Barber v. Pittsburgh Corning Corporation*, 521 Pa. 29, 555 A.2d 766, 769 (1989), for the proposition that Pennsylvania's "ODA and the WCA are similar statutes, designed to provide certain compensation for employees injured in the course of their employment." "Although the language varies slightly, the exclusive remedy provisions of both the WCA and ODA are very similar." *Barber*, 555 A.2d at 769. The determination of whether an employee's injuries occurred during the course of employment is also similar, and thus we reach the same conclusion as we did above that Plaintiffs' injuries occurred in the course of their employment for purposes of the ODA and therefore such claims are barred by the exclusivity provision of the ODA.

### 4. Conclusion

For the reasons stated above we will grant Defendant Prism's motions and dismiss the state law tort claims asserted against Prism. A specific Order will be entered with respect to the separate motions filed in each case and the corresponding Counts involved.

An appropriate Order follows.

### ORDER

AND NOW, to-wit, this *24th* day of February, 2005, for the reasons set forth above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Prism Technologies and Assemblies, LLC's ("Prism") Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress Claim (**Doc. 18**) filed in **Civil No. 03–23 Erie** (Plaintiff Heckman–Cottrell) be and hereby is GRANTED. Count III is hereby dismissed as asserted against Defendant Prism.

2. Defendant Prism Technologies and Assemblies, LLC's ("Prism") Motion to Dismiss Plaintiff's Battery and Intentional Infliction of Emotional Distress Claims (**Doc. 26**) filed in **Civil No. 01–312 Erie** (Plaintiff Gunsallus) be and hereby is GRANTED. Count V and Count VI are hereby dismissed as asserted against Defendant Prism.

3. Defendant Prism Technologies and Assemblies, LLC's ("Prism") Motion to Dismiss Plaintiff's Battery and Intentional Infliction of Emotional Distress Claims (**Doc. 32**) filed in **Civil No. 01–274 Erie**

(Plaintiff Hancuff) be and hereby is GRANTED. Count VI and Count VII are hereby dismissed as asserted against Defendant Prism.